ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   NC-11-1653-MkHPa |
| ) | |
| WILEHARDA KILIAN MBUNDA, ) | Bk. No.   10-34095 |
| ) | |
| Debtor. ) | Adv. No.  10-03267 |
| _____ ) | |
| ) | |
| THOMAS VAN ZANDT, Executor for ) | |
| the Estate of Evaline Jeanne   ) | |
| Malis, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **OPINION** |
| ) | |
| WILEHARDA KILIAN MBUNDA, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on October 18, 2012
at San Francisco, California

Filed – December 14, 2012
_____

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Dennis Montali, Bankruptcy Judge, Presiding
_____

Appearances: Appellant Thomas Van Zandt, Esq. argued on his own behalf as executor for the estate of Evaline Jeanne Malis; and Stephen D. Finestone, Esq. argued for Appellee Wileharda Kilian Mbunda.
_____

Before:  MARKELL, HOLLOWELL, and PAPPAS, Bankruptcy Judges.

MARKELL, Bankruptcy Judge:

## INTRODUCTION

Appellant Thomas Van Zandt ("Thomas"), as executor for the estate of Evaline Jeanne Malis ("Malis"),[1] sued debtor Wileharda Kilian Mbunda ("Mbunda") seeking to declare that a debt Mbunda owed to Malis's probate estate was nondischargeable. The bankruptcy court initially dismissed without leave to amend all but one of Thomas's claims for relief. At trial, the court granted Mbunda's motion for a judgment on partial findings at the close of Thomas's case, and entered judgment in favor of Mbunda. We AFFIRM.

## FACTS

Mbunda filed her chapter 7[2] bankruptcy case in October 2010. In her schedules, Mbunda listed a debt to Malis in the amount of $165,000 ("Debt"). According to Mbunda's schedules, the Debt arose from business loans made by Malis to Mbunda in September and November 2005. These loans were made to Mbunda as the sole proprietor of an art and jewelry store known as the Twiga Gallery.

Thomas filed his nondischargeability complaint against

---

[1]Because some of the key players in this appeal share the same surname, we refer to them by their first name for ease of reference. No disrespect is intended.

[2]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure. All "Evidence Rule" references are to the Federal Rules of Evidence.

2

Mbunda in December 2010. Thomas alleged that the Debt was nondischargeable under § 523(a)(2)(A), (4) and (6). Consistent with Mbunda's bankruptcy schedules, the complaint referred to the transactions from which the Debt arose as a $100,000 loan from Malis to Mbunda in September 2005 and a second $100,000 loan from Malis to Mbunda in November 2005. According to the complaint, Malis refinanced her home in order to loan the $200,000 to Mbunda.

In pertinent part, Thomas also alleged that Mbunda made the following misrepresentations in order to induce Malis to loan Mbunda the $200,000:

1.   Mbunda would use the loan proceeds to purchase artistic materials for the art gallery, "including antique beads and quantities of gold, ivory and precious and semi-precious gemstones" (collectively, "Raw Materials").

2.   Malis would have a security interest in the Raw Materials and in other real and personal property Mbunda owned.

3.   Malis also would have a security interest in the Twiga Gallery (collectively with the Raw Materials and the other real and personal property allegedly promised as security, the "Collateral").[3]

_____

[3]The complaint repeatedly refers to the Debt as a loan, and repeatedly refers to the security allegedly promised for the loan. In two places, however, the complaint refers to the underlying transaction as something other than a loan secured by real and personal property security. First, it alleged that Mbunda induced Malis "to invest" in the Twiga Gallery. Complaint (Dec. 14, 2010) at ¶ 6. Second, it states that Mbunda told Malis
(continued...)

3

4.  Mbunda would execute transaction documentation memorializing the Debt and Malis's security interest in the Collateral.

5.  Mbunda would make monthly payments sufficient to cover the increased amount of Malis's monthly mortgage payments resulting from Malis's home refinancing.

Mbunda moved to dismiss Thomas's complaint.  In response, the bankruptcy court dismissed without leave to amend Thomas's § 523(a)(4) claim to the extent it did not deal with larceny, as well as his § 523(a)(6) claim.  The bankruptcy court granted Thomas leave to amend his § 523(a)(2)(A) claim and that portion of his § 523(a)(4) claim alleging that the Debt was a debt arising from larceny.

Thomas filed an amended complaint.  Mbunda again filed a motion to dismiss.  The bankruptcy court granted Mbunda's motion in part, dismissing Thomas's remaining § 523(a)(4) claim without leave to amend.  It then set the sole remaining claim under § 523(a)(2)(A) for trial.[4]

---

[3](...continued)
that the Debt would be "secured by an ownership interest" in the Twiga Gallery.  Complaint (Dec. 14, 2010) at ¶ 8.  Thomas referred to these two allegations when trying to establish that the loan was really some other form of transaction, such as a partnership, in order to state a claim under § 523(a)(4).  We address this argument later in this opinion.

[4]Thomas had originally attempted to state a claim under § 523(a)(4) for, among other things, embezzlement and larceny. These were among the claims initially dismissed.  Thomas has not challenged the dismissal of his § 523(a)(4) action alleging these acts.  As a result, he has waived any argument relating to those theories.  See Brownfield v. City of Yakima, 612 F.3d 1140, 1149 (continued...)

4

On November 2, 2011, the trial on Thomas's § 523(a)(2)(A) claim commenced.  After Thomas presented his case in chief, Mbunda moved under Civil Rule 52(c)[5] for a judgment on partial findings.  The bankruptcy court granted that motion and, on November 10, 2011, entered a final judgment in Mbunda's favor.  Thomas timely filed a notice of appeal on November 15, 2011.[6]

**DISCUSSION**

During the course of the adversary proceeding, the bankruptcy court ruled against Thomas on each of his three claims for relief.  We address each claim for relief in turn.

**1.   Section 523(a)(2)(A).**

Section 523(a)(2)(A) excepts from discharge debts incurred under false pretenses, based on false representations, or based on actual fraud.  In particular, to establish fraud under § 523(a)(2)(A), the creditor must prove each of the following five elements by a preponderance of the evidence:

(1) the debtor made a representation;

---

[4](...continued)
n.4 (9th Cir. 2010); Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002).

[5]Rule 7052 makes Civil Rule 52(c) applicable in adversary proceedings.  Civil Rule 52(c) provides in relevant part:

> **Judgment on Partial Findings.** If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

[6]The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).  We have jurisdiction under 28 U.S.C. § 158.

(2) the debtor knew the representation was false at the time he or she made it;

(3) the debtor made the representation with the intent to deceive;

(4) the creditor justifiably relied on the representation; and

(5) the creditor sustained damage as a proximate result of the misrepresentation having been made.

Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010). When, as here, the bankruptcy court has resolved the matter under Civil Rule 52(c), we review the "'court's findings of fact for clear error and its legal conclusions de novo.' . . . . The same standard applies to the district court's involuntary dismissal of a claim under [Civil] Rule 52(c).'" Lee v. W. Coast Life Ins. Co., 688 F.3d 1004, 1009 (9th Cir. 2012) (quoting Price v. U.S. Navy, 39 F.3d 1011, 1021 (9th Cir. 1994)). When deciding a motion under Civil Rule 52(c), as incorporated by Rule 7052, the bankruptcy court is "'not required to draw any inferences in favor of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence.'" Id. (quoting Ritchie v. United States, 451 F.3d 1019, 1023 (9th Cir. 2006)). Accordingly, we review Thomas's contentions that the bankruptcy court did not correctly find an absence of essential elements of the fraud claim under the clearly erroneous standard. See Candland v. Ins. Co. of N. Am. (In re Candland), 90 F.3d 1466, 1469 (9th Cir. 1996); Am. Express Travel Related Servs. Co. v. Vee Vinhnee (In re Vee Vinhnee), 336 B.R. 437, 443 (9th Cir. BAP 2005) (citing Anastas v. Am. Sav.

6

Bank (In re Anastas), 94 F.3d 1280, 1283 (9th Cir. 1996)).

Here, in support of its Civil Rule 52(c) ruling, the bankruptcy court determined that there was no admissible evidence from which it could find that Thomas had proved the first or second elements of his § 523(a)(2)(A) claim: that Mbunda had made any knowingly false representations. In particular, the court found that Thomas presented no admissible evidence that Mbunda had made any affirmative misrepresentations regarding: the provision of security or collateral for the Debt; the execution of particular documentation for the Debt; or the timing or amount of monthly payments on the Debt.

While the bankruptcy court acknowledged that Mbunda had testified that she had told Malis of her need to repay certain debts around the time of the original transaction, the court found that what Mbunda generally told Malis did not amount to a representation that the loan proceeds would be used only to pay those debts. Furthermore, the court also found that what Mbunda generally told Malis was consistent with Mbunda's actual use of the proceeds. According to the court, Mbunda's uncontradicted testimony reflected that she used most of the proceeds to pay her debts, including those she owed to her landlord and to certain consignors of goods.

The bankruptcy court further found that Mbunda's promise to repay the Debt was not false when made. It instead found that Mbunda intended to repay the loan at the time she borrowed the $200,000 from Malis. In support of this finding, the court relied on the exhibits, offered by Thomas and admitted into evidence, reflecting that Mbunda had made payments on the Debt of

7

at least $40,000, and perhaps as much as $50,000. According to the court, these payments "completely undermined" any notion that Mbunda did not intend to repay the Debt at the time she incurred it. This finding was not clearly erroneous, as it is not illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc).

Perhaps because of the high standard of review, Thomas did not argue in his opening brief that the bankruptcy court's findings were clearly erroneous. Instead, he argued that the bankruptcy court committed reversible error by excluding certain evidence. Of the evidence the bankruptcy court excluded, the most significant is Thomas's testimony regarding what Malis supposedly told him about the Debt before she passed away.

This is also a difficult argument for any appellant, as we review a bankruptcy court's evidentiary rulings for abuse of discretion, and then only reverse if any error would have been prejudicial to the appellant. See Johnson v. Neilson (In re Slatkin), 525 F.3d 805, 811 (9th Cir. 2008) (citing Latman v. Burdette, 366 F.3d 774, 786 (9th Cir. 2004)). "We afford broad discretion to a district court's evidentiary rulings. To reverse such a ruling, we must find that the district court abused its discretion and that the error was prejudicial. A reviewing court should find prejudice only if it concludes that, more probably than not, the lower court's error tainted the verdict." Harper v. City of Los Angeles, 533 F.3d 1010, 1030 (9th Cir. 2008) (citations and internal quotation marks omitted); see also S.E.C. v. Jasper, 678 F.3d 1116, 1122 (9th Cir 2012) (stating that a trial court's evidentiary rulings should not be disturbed absent

8

a "clear abuse of discretion" and prejudice).

Here, the record makes clear the content of Thomas's proposed testimony. We have the record of Thomas's arguments made at trial, his offers of proof, and a declaration that he filed in support of his opposition to Mbunda's motion in limine to exclude such evidence. These portions of the record reflect that, according to Thomas, Malis told him in 2009 and 2010 that Mbunda had made the following representations regarding the Debt:

1. that "the loan was an investment";

2. that the loan would be used to purchase "valuable art items including antique beads, gold and silver, ivory, and gems . . .";

3. that the Raw Materials purchased with the loan proceeds would be used to produce art works that would be sold at a profit;

4. that, if Mbunda could not produce or sell such art works, she would resell the Raw Materials purchased to repay the loan;

5. that Mbunda would make monthly payments large enough to pay off the Debt within five years;

6. that, as an investor, Malis would receive a percentage of the profits from the sale of the artworks;

7. that Mbunda and Malis were partners;

8. that Mbunda had many valuable things she could sell to repay the Debt; and

9. that Mbunda would execute documentation memorializing all that they had agreed to.

See Plaintiff's Decl. (Oct. 31, 2011) at pp. 2-3.

9

The bankruptcy court ruled that Thomas's proposed testimony was inadmissible hearsay. See Evidence Rules 801, 802. Thomas first challenges the bankruptcy court's characterization of the proposed testimony as hearsay: he argues that Malis's out-of-court statements were not being offered to prove the truth of the matter asserted. If correct, admission of the statements would not violate the hearsay rule. Evidence Rule 801(c)(2) (statements are hearsay only if "a party offers [them] in evidence to prove the truth of the matter asserted in the statement."). According to Thomas, he offered the statements to establish that Malis thought she had security, or alternatively thought she was in a partnership with Mbunda. Once Malis's mental state was established, Thomas would then be able to argue that the court could infer that representations by Mbunda – about the collateral and the existence of something other than a loan – had caused Malis's state of mind.

Thomas's argument, however, confuses and conflates the proffered testimony. The excluded testimony contained two levels of out-of-court statements: (1) what Mbunda told Malis, and (2) what Malis told Thomas. Had Malis been available to testify at trial as to what Mbunda had told her, the first level statements – what Mbunda supposedly told Malis – could have been admitted either because they would have been the admission of a party opponent, Evidence Rule 801(d)(2), or they could have been testimony not about the truth of Mbunda's statements, but about the terms of the contract between them. 5-801 Weinstein's Federal Evidence § 801.11[3] (2012) ("the rule against hearsay does not exclude relevant evidence as to what the contracting parties said

10

or wrote with respect to the making or the terms of an agreement."); see also United States v. Montana, 199 F.3d 947, 950 (7th Cir. 1999).

But Malis was deceased. Thomas was thus blocked at the second level in attempting to admit what Malis had told him about what Mbunda had told Malis. As a result, Thomas attempted to testify regarding what Malis had told him in 2009 and 2010 about what Mbunda had told Malis about a transaction that occurred back in 2005.

This convoluted argument shows that Thomas was not trying to establish Malis's mental state. He was attempting to offer Malis's statements to prove the truth of what Malis allegedly had told him about her discussions with Mbunda. As such, Thomas's statements were inadmissible hearsay, Evidence Rule 801, 802, 805, and their exclusion was not an abuse of discretion. In re Slatkin, 525 F.3d at 811.

Anticipating that he would not prevail on his hearsay characterization argument, Thomas next argues that Malis's statements were excepted from the rule against hearsay by Evidence Rule 803(3). That rule excepts from the hearsay rule "statement[s] of memory or belief to prove the fact remembered or believed" if those statements relate "to the validity or terms of the declarant's will." Evidence Rule 803(3). According to Thomas, Malis initially shared with him some of her memories regarding the Debt in the midst of a discussion regarding whether she needed a will.

But Thomas's reading of this exception to the hearsay rule is overbroad. The Advisory Committee Notes accompanying this

11

rule make clear that this exception is limited to statements concerning "the execution, revocation, identification, or terms of declarant's will."  Evidence Rule 803, Advisory Committee Note to para. 3 (citing Annotation:  Admissibility of testator's declarations upon issue of genuineness or due execution of purported will, 62 A.L.R.2d 855 (1958)).  Malis's supposed memories about her discussions with Mbunda regarding the Debt simply are beyond the scope of this exception.  As one treatise explains:

> The "exception" for wills cases is created by special language in the state-of-mind exception creating an exception to the limit that otherwise applies, and "backing in" to a new hearsay exception of such breadth seems out of proportion to the language chosen. Pre-Rules state cases did not allow such broad use of the exception, which reinforces the proposition that the minimal approach taken in the language of the Fed. R. Evid. 803(3) did not completely change practice by opening the door broadly to statements proving behavior by others.

Christopher B. Mueller and Laird C. Kirkpatrick, 4 FED. EVID. § 8:74 (3d ed. 2012).  Again, the bankruptcy court's refusal to allow these statements into evidence was not an abuse of discretion as it was a straightforward and correct application of Evidence Rule 803(3).  Slatkin, 525 F.3d at 811.

Thomas next argues that the bankruptcy court should have applied Evidence Rule 807(a)'s "residual exception" to admit his statements.  Again, this is a difficult argument on appeal; a trial court's decision that evidence did not meet the requirements of Evidence Rule 807 is reviewed under the abuse of discretion standard.  United States v. Shryock, 342 F.3d 948, 982 (9th Cir. 2003).  Indeed the Ninth Circuit has recently noted that:

> Our research has disclosed only one instance where a circuit court reversed a district court to require admission of a statement under [Evidence Rule] 807. See U.S. v. Sanchez-Lima, 161 F.3d 545, 547-48 (9th Cir. 1998). However, the hearsay statements in that case were videotaped and under oath, and thus had indicators of trustworthiness that Anderson's statements do not.

United States v. Bonds, 608 F.3d 495, 501 (9th Cir. 2010).

Thomas nevertheless contends that the bankruptcy court ruled that the residual exception was inapplicable because Thomas's hearsay testimony failed to qualify for any of the specifically listed hearsay exceptions.  But that argument mischaracterizes the import and meaning of the bankruptcy court's ruling.  A fair reading of the entire record persuades us that the bankruptcy court declined to apply the residual exception because it concluded that Malis's out-of-court statements regarding the Debt did not satisfy the rule's requirements.  In particular, in order to apply the residual exception, the bankruptcy court would have needed to determine, among other things, that the offered statements had "circumstantial guarantees of trustworthiness" equivalent to those associated with the hearsay exceptions set forth in Evidence Rules 803 and 804.  See, e.g., United States v. Leal-Del Carmen, 697 F.3d 964, 974 (9th Cir. 2012) (indicia of trustworthiness included fact that witness's statement was on videotape, thus allowing trier of fact to assess demeanor, and that statements were made under oath).

Here, the record supports the bankruptcy court's finding that Malis's statements lack the required circumstantial guarantees.  The statements were not made under oath nor were they recorded in any way.  There was no showing that Malis was

13

under any obligation or incentive to tell the truth.

Indeed, the evidence in the record can be easily read to show a lack of the required circumstantial guaranties. This other evidence tended to establish that in 2009-2010, when the statements allegedly were made, Malis not only was quite elderly but also was unwell. Thomas's proposed testimony further indicated that during this period Malis was no longer able to fully manage her own financial affairs. Additionally, the relevant statements from Malis related to circumstances that were already four years old at the time she spoke with Thomas.

The lack of detail extended to crucial factual points: it is impossible to tell from the excluded statements <u>when</u> Malis thought Mbunda allegedly made the representations. Without specifics as to time, the statements left open the possibility that the alleged representations were made after Mbunda incurred the Debt, calling causation into question, as well as whether Malis actually relied upon them in making the loans.[7]

Accordingly, because the bankruptcy court had more than an adequate basis to find that Malis's statements did not have the requisite "circumstantial guarantees of trustworthiness," it did not abuse its discretion when it declined to apply the residual exception to the hearsay rule.

Thomas's evidentiary ruling challenges do not end there. He

---

[7]It seems quite possible that Malis developed her understanding of her rights in relation to the Debt after the Debt was incurred. The record suggests that Malis's discussions with Mbunda regarding Mbunda's financial situation were ongoing and fluid, rather than static and limited to a single point in time.

14

also sought to offer his own testimony, and that of his son Patrick Van Zandt ("Patrick"), that Malis did not draft the promissory note that Thomas had agreed could be admitted in evidence ("Note"). The relevance of this proffered testimony was not that the Note failed to correctly state the terms of the Debt, but that Mbunda had forged it, thus undermining her credibility.

Thomas relied on Evidence Rule 701 to justify admission of this testimony, which Thomas stated would have consisted of lay opinion that Malis would never have drafted something like the Note. The bankruptcy court expressed two concerns about this offered testimony. First, the court was concerned that Evidence Rule 701 would not permit such testimony. The note was apparently typed, and there was no issue as to Mbunda's signature. Second, even if admissible, the court doubted Thomas's explanation regarding what this testimony would prove and why this testimony was relevant.

Like the bankruptcy court, we are also perplexed as to why Thomas stipulated to the Note's admission into evidence without reservation in light of the arguments regarding the Note that he anticipated making. If the Note were not genuine, it should not have been admitted into evidence to establish the existence of the Debt. But setting our perplexity aside, even if we were to assume that the bankruptcy court incorrectly ruled regarding the admissibility of Thomas's and Patrick's Note-related testimony, that ruling was, at most, harmless error. Nothing in Thomas's account of his and Patrick's excluded testimony reasonably could have altered the bankruptcy court's dispositive finding: that

15

there was no evidence from which the bankruptcy court could conclude Mbunda made affirmative misrepresentations regarding the Debt.

Generally speaking, we ignore harmless error. See <u>Litton Loan Serv'g, LP v. Garvida (In re Garvida)</u>, 347 B.R. 697, 704 (9th Cir. BAP 2006) (citing 28 U.S.C. § 2111, Rule 9005, Civil Rule 61, and <u>Donald v. Curry (In re Donald)</u>, 328 B.R. 192, 203-04 (9th Cir. BAP 2005)). Specifically with respect to erroneous evidentiary rulings, such rulings do not constitute reversible error unless it is more likely than not that the rulings changed the outcome of the lawsuit. See <u>Harper</u>, 533 F.3d at 1030.

Simply put, Thomas's and Patrick's Note-related testimony could not have altered the outcome of the underlying adversary proceeding even if that testimony had been admitted. The outcome of the adversary proceeding hinged on the absence of evidence from which the bankruptcy court, as the trier of fact, could find that Mbunda made affirmative misrepresentations when she incurred the Debt. The same is true for the handful of other evidentiary items that Thomas complains the bankruptcy court should not have excluded.[8] None of these other items of excluded evidence would have enabled the court to find that Mbunda made the requisite misrepresentations necessary to support Thomas's § 523(a)(2)(A) claim for relief.

---

[8]Thomas argues that the bankruptcy court should not have prevented him from: eliciting testimony from Mbunda regarding certain alleged patterns in her business-related expenditures; eliciting testimony from Mbunda regarding how many bank accounts she has used at various times; and requiring Mbunda to read aloud the contents of the Note. We do not find that any of these rulings constitute an abuse of discretion.

16

**2.    Section 523(a)(4).**

Thomas also challenges the bankruptcy court's dismissal of his § 523(a)(4) claim without leave to amend.  Dismissals under Civil Rule 12(b)(6) are reviewed de novo.  See AlohaCare v. Haw., Dept. of Human Servs., 572 F.3d 740, 744 n.2 (9th Cir. 2009).  Under that standard, "'[d]ismissal without leave to amend is improper, unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.'" Intri-Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (quoting In re Daou Sys., Inc., Sec. Litig., 411 F.3d 1006, 1013 (9th Cir. 2005)).

In pertinent part, § 523(a)(4) excepts from discharge debts incurred for "for fraud or defalcation while acting in a fiduciary capacity."  § 523(a)(4).  The term "fiduciary" is narrowly defined for purposes of § 523(a)(4).  Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011) (citing Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003)).  In order for there to be nondischargeability under § 523(a)(4), the debtor's fiduciary capacity "must be arising from an express or technical trust that was imposed before, and without reference to, the wrongdoing that caused the debt . . . ."  In re Cantrell, 329 F.3d at 1125 (quoting Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996)).  A trust "ex maleficio" – that is, a trust imposed by law as a remedy for malfeasance or wrongful actions – will not suffice. In re Honkanen, 446 B.R. at 379.  Moreover, "[t]he broad, general definition of fiduciary - a relationship involving confidence, trust and good faith - is inapplicable in the dischargeability

17

context." In re Cantrell, 329 F.3d at 1125 (quoting Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986)).

Despite these uncontested principles, Thomas in essence claims that the bankruptcy court should have given him the opportunity to amend his § 523(a)(4) claim to add allegations regarding the existence of a partnership.[9] As Thomas pointed out, partners in California have the type of fiduciary duty with respect to partnership assets that § 523(a)(4) covers. See Ragsdale 780 F.2d at 796-97.

But we are convinced that any amendment to the complaint attempting to fix the defects in the § 523(a)(4) claim would have been futile. When amendment would be futile, the bankruptcy court does not abuse its discretion in dismissing the complaint without leave to amend. Dougherty v. City of Covina, 654 F.3d 892, 901 (9th Cir. 2011); Albrecht v. Lund, 845 F2d 193, 195 (9th Cir. 1988). Amendment is futile when "'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" Id. (quoting Schreiber Distrib. Co. v.

[9]In this regard, Thomas argued on appeal:

> While it appears clear from the record that the Court below was aware that Appellant believed that there were sufficient factual allegations that he could make that would support the existence of a partnership and hence a fiduciary duty in order to state a claim under § 523(a)(4), the Court below seems to be attempting to protect Appellant's interests by dissuading Appellant from pleading a partnership . . . .

Aplt. Opn'ng Br. (Feb. 3, 2012) at 11:19-24. As set forth below, the record actually reveals that Thomas admitted in open court that he had no other facts to allege regarding the existence of a partnership.

18

*Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

Thomas admitted at the hearing on Mbunda's first motion to dismiss that he had no other facts to allege regarding the existence of a partnership:

> THE COURT: You've simply pled the statute [§ 523(a)(4)]. You haven't — what fact on page 3 of the complaint have you done — established anything that might fit this fiduciary preexisting partnership relationship?
>
> MR. VAN ZANDT: Well, but the partnership perhaps, if — if there is one, was established at that time —
>
> THE COURT: I just asked where you've mentioned it in the paper. Thats all.
>
> MR. VAN ZANDT: Oh, I don't — I do not mention that there's a partnership, because I have no information that a partnership was formed, other than the facts of what happened.
>
> THE COURT: You haven't even mentioned that a partnership was intended.
>
> MR. VAN ZANDT: I don't know that one was.

Hr'g Trans. (Feb. 25, 2011) at 18:3-16.

Nor has Thomas identified on appeal any additional facts he was prepared to allege to shore up his partnership claim. *See Dougherty*, 654 F.3d at 901 (relying on a similar failure to identify additional allegations in affirming dismissal without leave to amend). A complaint must contain more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "<u>enough facts</u> to state a claim to relief that is plausible on its face." *Id.* at 570 (emphasis added). The facts alleged must nudge the plaintiff's claims "across the line from conceivable to plausible." *Id.* Thomas, by his own admission, could not do that here. Accordingly, the bankruptcy court did not err in

19

dismissing the § 523(a)(4) claim without leave to amend.

**3.   Section 523(a)(6).**

Thomas also challenges the bankruptcy court's dismissal of his § 523(a)(6) claim without leave to amend.  Section 523(a)(6) excepts from discharge debts arising from willful and malicious injury.  Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010).  In prosecuting its case, a creditor must separately plead and prove both willfulness and maliciousness.  Albarran v. New Form. Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008).  When, as here, the bankruptcy court dismissed the claim without leave to amend, the standard of review is the same as for similar dismissals under § 523(a)(4): "'[d]ismissal without leave to amend is improper, unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.'"  Intri-Plex Techs., 499 F.3d at 1056 (quoting In re Daou Sys., 411 F.3d at 1013).

As to the individual elements of a § 523(a)(6) claim, "[a] 'willful' injury is a 'deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.'"  In re Barboza, 545 F.3d at 706 (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)) (emphasis in original).  In order to establish a willful injury, a creditor must plead and prove that the debtor had a "subjective motive to inflict injury" or a subjective belief that injury was "substantially certain to result" from the debtor's conduct.  In re Ormsby, 591 F.3d at 1206 (citing Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002)).

As an aid to determining the debtor's motives, cases under

20

§ 523(a)(6) presume the debtor knows the natural consequences of his or her actions. In re Ormsby, 591 F.3d at 1206; see also In re Su, 290 F.3d at 1146 n.6 ("In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action.").

With respect to the second element, malicious injury, "'[a] malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" Ormsby, 591 F.3d at 1207 (quoting Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001)).

Thomas argues that he meets both the malicious and wilful elements of a 523(a)(6) claim for relief because he adequately pled (or could have adequately pled) a claim for elder abuse under Cal. Welfare & Insts. Code § 15610.30 ("W&I § 15610.30"). He contends that a well-pled claim under W&I § 15610.30 is co-extensive with a willful and malicious injury under § 523(a)(6). In other words, according to Thomas, if he pled (or could have pled) the elements for elder abuse under W&I § 15610.30, he necessarily would have pled (or could have pled) the elements for a nondischargeable debt under § 523(a)(6).

This is simply wrong. W&I § 15610.30 in relevant part provides that a person or entity commits financial abuse of an elder or dependent adult when they do any of the following:

> (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent

21

adult for a wrongful use or with intent to defraud, or both.

(2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

(3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 1575 of the Civil Code.[10]

Under the plain language of W&I § 15610.30, a claim for elder abuse must include: (1) a wrongful use; (2) an undue influence/unfair advantage; or (3) an intent to defraud. The first two types of conduct covered – wrongful use and undue influence/unfair advantage – do not require any motive to injure or any belief that injury will occur. See Cal. Civ. Code § 1575; Stebley v. Litton Loan Serv., LLP, 134 Cal. Rptr. 3d 604, 608 (Cal. App. 2011).

But a creditor such as Thomas must plead and prove a "subjective motive to inflict injury" or a subjective belief that

_____

[10]Cal. Civ. Code § 1575 provides that taking or obtaining of an unfair advantage is an essential component of undue influence. As set forth in full, Cal. Civ. Code § 1575 states as follows:

**Undue influence, what.** Undue influence consists:

1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him;

2. In taking an unfair advantage of another's weakness of mind; or,

3. In taking a grossly oppressive and unfair advantage of another's necessities or distress.

22

injury was "substantially certain to result" from the debtor's conduct in order to succeed on a § 523(a)(6) claim. <u>In re Ormsby</u>, 591 F.3d at 1206 (citing <u>In re Su</u>, 290 F.3d at 1142). Thus, even were it true that Thomas could have pled a W&I § 15610.30 claim based upon Mbunda's wrongful use or upon some undue influence/unfair advantage Mbunda employed against Malis, Thomas could not have stated a § 523(a)(6) claim because neither of these types of conduct would have been sufficient to establish the requisite willfulness. As a consequence, even if Thomas could establish a claim under those parts of W&I § 15610.30, it would not necessarily be nondischargeable under § 523(a)(6).

By process of elimination, that only leaves us with the possibility that Thomas could have pled a W&I § 15610.30 claim based on an intent to defraud. Thomas, however, was allowed to proceed to trial on his fraud theories in connection with his § 523(a)(2)(A) claim for relief. And he lost; the bankruptcy court correctly found (as we held above) that Thomas lacked any factual or evidentiary basis to support his fraud theories. At no time either on appeal or before the bankruptcy court has Thomas suggested that he had any facts or evidence in support of his fraud theories other than what he already stated in his complaint and at trial. These circumstances inexorably lead us to two alternate conclusions: (1) allowing Thomas to amend his § 523(a)(6) claim would have been futile; or (2) not allowing Thomas to amend his § 523(a)(6) claim was harmless error. Under

23

either conclusion, Thomas can not prevail.[11]

**4.    Due Process**

Finally, Thomas argues that the bankruptcy court deprived him of due process in the course of the trial on his § 523(a)(2)(A) claim.  We review due process issues de novo. Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009).

Thomas's due process argument is twofold.  First, according to Thomas, the cumulative effect of all of the bankruptcy court's adverse evidentiary rulings at trial was to deprive him of a meaningful opportunity to be heard.  Second, Thomas complains that the court rushed through the scheduled one-day trial simply for the purpose of completing the trial as scheduled, which also deprived him of a meaningful opportunity to be heard.

An appellant, however, must show prejudice to support a due process claim.  See Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 776 (9th Cir. 2008).  Here, Thomas has not shown any.  To the contrary, the merits analysis set forth above demonstrates that Thomas lost not because of any due process violations; he lost because he was unable to offer admissible evidence to establish his claim.  There was no cumulative effect of adverse rulings because, as we set forth above, there were no incorrect evidentiary rulings.  And no amount of additional time could fix that problem.  In short, the absence of any prejudice shows no

---

[11]The bankruptcy court dismissed Thomas's § 523(a)(6) claim on different grounds, but we may affirm on any basis reasonably found in the record.  Caviata Attached Homes, LLC v. U.S. Bank, N.A., 481 B.R. 34, 44 (9th Cir. BAP 2012).

24

abuse of discretion, and thus is fatal to Thomas's due process claim.

**CONCLUSION**

For all of the reasons set forth above, we AFFIRM the bankruptcy court's judgment in favor Mbunda on Thomas's nondischargeability complaint.

25