# FILED

NOT FOR PUBLICATION

APR 09 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re: )  BAP No.  CC-12-1303-TaMoMk
)
MERUELO MADDUX PROPERTIES, )  Bk. No.  SV 09-13356-VK
INC., et al., )
)
          Debtors. )
_____)
)
BELINDA MERUELO, )  **MEMORANDUM**[*]
)
          Appellant, )
)
v. )
)
MERUELO MADDUX PROPERTIES, )
INC., et al., )
)
          Appellees. )
_____)

Argued and Submitted On February 21, 2013
at Pasadena, California

Filed - April 9, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria Kaufman, Bankruptcy Judge, Presiding

———————————

Appearances:    Gregory M. Salvato of Salvato Law Offices on
behalf of Appellant Belinda Meruelo; Christopher
E. Prince of Lesnick Prince & Pappas LLP on behalf
of Evoq Properties, Inc. (formerly known as
Meruelo Maddux Properties, Inc.) and Merco Group -
2001-2021 West Mission Boulevard, LLC

———————————

———————————

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Before:  TAYLOR, MONTALI,[**] and MARKELL, Bankruptcy Judges.

**INTRODUCTION**

Belinda Meruelo, individually, as trustee of the Meruelo Living Trust u/d/t dated November 11, 1988 ("Trust"), and as representative of the Estate of Homer Meruelo (hereinafter in all capacities, "Belinda"[1]), filed a proof of claim in the chapter 11 bankruptcy case of Merco Group 2001-2021 West Mission Boulevard, LLC ("Merco Group"), case no. 09-13403.[2]  Merco Group[3] objected

---

[**]The Honorable Dennis Montali, Bankruptcy Judge for the Northern District of California, sitting by designation.

[1]  An appeal filed by Belinda Meruelo's son Richard Meruelo was also submitted to this Panel on February 21, 2013 in BAP No. CC-12-1304.  In order to avoid unnecessary confusion, the appellant here will be referred to as "Belinda."  We intend no disrespect by this informality.

[2]  We exercised our discretion and independently reviewed certain imaged documents from the bankruptcy court's electronic docket.  See Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).  In so doing, we determined that on April 7, 2009, the bankruptcy court ordered joint administration of Merco Group's bankruptcy case with 53 related cases under case no. 09-13356, In re Meruelo Maddux Properties, Inc. ("MMPI")("Joint Administration Order").  The Joint Administration Order directed claimants to file proofs of claim in the case directly related to their claims and to use the caption and case number for that case when so doing.  It also, however, directed use of the MMPI case number, caption, and docket in connection with all other filings in the jointly administered cases.  As a result, the MMPI docket included more than 3700 entries at the time of our review; this significantly impeded our ability to independently identify relevant documents.

[3]  On June 24, 2011, the bankruptcy court entered an order confirming a plan of reorganization.  The post-confirmation Merco Group filed the motion for disallowance.

2

to the claim and moved for disallowance; the bankruptcy court granted the disallowance motion. Belinda appeals the bankruptcy court's order disallowing the claim. We AFFIRM.

**FACTS**[4]

**Pre-Petition Sale of the Property.**

In early 2005, Merco Group, as buyer, entered into a contract with Meruelo Pomona, LLC, as seller, to purchase improved real property located in Pomona, California (the "Property") for $20,000,000. Belinda and her late husband, Homer Meruelo, managed and owned the selling entity ("Seller"). Their son, Richard Meruelo, managed Merco Group.

When Seller and Merco Group executed the purchase agreement ("Purchase Agreement"), a deed of trust securing debt owed by Seller to PNL Pomona, L.P. ("PNL") encumbered the Property. PNL also held a written guaranty from Belinda ("Guaranty") guaranteeing repayment of its loan to Seller.

The sale transaction closed over two years later on or about July 27, 2007. On closing, Merco Group paid the sales price, in part, by assuming the obligation to repay the PNL loan which had a then outstanding balance of $8,763,304.85. The Purchase Agreement did not require a release of the Guaranty, and Belinda remained bound by the Guaranty after assumption.

**Post-Petition Proceedings.**

On or about March 27, 2009, Merco Group and 53 related entities filed voluntary petitions under chapter 11. The

---

[4] The record on appeal reflects that the background facts are not in dispute.

3

Property became an asset of a bankruptcy estate. On September 24, 2009, Belinda filed the original proof of claim ("Original Claim"). The Original Claim stated that it was an indemnification claim and sought payment to the extent Belinda, in the future, incurred losses associated with Merco Group's failure to re-pay PNL.

Thereafter, PNL sued Belinda in an action seeking recovery on the Guaranty in Los Angeles Superior Court, <u>PNL Pomona, L.P. v. Belinda Meruelo, et al.</u>, case number KC055493 ("Guaranty Action").[5] As a result, on December 6, 2011, Belinda filed an amendment to the Original Claim ("Amended Claim") and asserted a specific claim for $3,306,941.05 based on a proposed judgment dated October 20, 2011 in the Guaranty Action. In the Amended Claim, Belinda alleged that: (1) as a third party beneficiary to the Purchase Agreement, she may enforce the Purchase Agreement against Merco Group pursuant to California Civil Code section 1559 ("CC Section 1559");[6] and (2) she holds rights to reimbursement and indemnification under California law, including California Civil Code section 2847 ("CC Section 2847").[7]

---

[5] It is not disputed that at some point thereafter, PNL foreclosed non-judicially against the Property.

[6] CC Section 1559 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

[7] CC Section 2847 provides, in relevant part, that: "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses. . . ."

4

On January 23, 2012, Merco Group filed its Motion for Order Disallowing Claim of [Belinda] ("Motion") and sought disallowance on two grounds. First, Merco Group argued that section 502(e)[8] of the Bankruptcy Code[9] bars recovery under the Amended Claim as Belinda had not yet paid the PNL judgment. Second, Merco Group asserted that section 580d of the California Code of Civil Procedure ("CCP Section 580d") barred recovery. Merco Group, citing Union Bank v. Gradsky, 265 Cal. App. 2d 40, 44-47 (1968), argued that just as this anti-deficiency statute protects a borrower from a lender's deficiency claim after a non-judicial foreclosure, it also protects a borrower from the guarantor's reimbursement claim.

Belinda filed an opposition to the Motion ("Opposition").[10]

---

[8] Section 502(e) provides, in relevant part, that:

[T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that (A) such creditor's claim against the estate is disallowed; (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or (C) such entity asserts a right to subrogation under section 509 of this title.

[9] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[10] The Opposition initially sought a six month continuance of the hearing on the Motion on the grounds that the matter was not ripe, as Belinda alleged that damages were likely to increase. At that time, Belinda alleged out-of-pocket damages in
(continued...)

5

In substance, Belinda argued that Merco Group's first basis for disallowance, section 502(e), did not apply, because Merco Group was not liable with Belinda on the Guaranty. Belinda noted that the confirmed plan allowed PNL to non-judicially foreclose, that this foreclosure eradicated PNL's deficiency rights against Merco Group by operation of California law, and that this left only Belinda liable to PNL.

The Opposition did not address Merco Group's second basis for disallowance, CCP Section 580d. Instead, Belinda argued that Merco Group breached the Purchase Agreement when, having agreed to assume the PNL debt, it failed to satisfy the PNL debt in full and thereby release Belinda from obligations under the Guaranty. Belinda alleged that Seller contracted with Merco Group for the "express purpose of relieving [Belinda's] mortgage debt through the assumption of the loan by [Merco Group]." Opposition at 54:19-21. Belinda asserted, therefore, that as the third party beneficiary of the Purchase Agreement, she had the right to compel Merco Group to perform its obligations under the Purchase Agreement. Belinda, thus, requested that the bankruptcy court infer that such contractual obligations included payment of all the alleged damages incurred, or to be incurred, as a result of the Guaranty Action and Merco Group's failure to pay PNL in full.

[10](...continued)
the amount of $425,521.05, for attorney's fees incurred in defense of the Guaranty Action, but the proposed judgment in the Guaranty Action had not been entered. The bankruptcy court continued the initial hearing on the Motion, scheduled for March 15, 2012, to May 11, 2012, based on the parties' stipulation and order thereon. Neither the stipulation nor the order thereon, however, mentioned the ripeness argument.

The bankruptcy court heard oral argument on the Motion and Opposition on May 11, 2012.  After hearing brief argument, the bankruptcy court granted the Motion, on the following stated grounds:

> The Court doesn't see her as a third-party beneficiary. They bought the property.  The intention wasn't to relieve her of the debt, it was to acquire the property.  And so the Court's going to - - and for the other grounds explained in the motion.  So the objection is sustained.  Okay.

Hr'g Tr. (May 11, 2012) at 3:19-24.  The Court entered the order disallowing the Amended Claim on May 29, 2012 ("Order").  The Order, prepared by Merco Group's counsel, recites that it is based on the "Motion, the Opposition to the Motion, the Reply in support, the arguments presented at the hearing, and the pleadings and papers on file in this proceeding . . . ."  Order, Dkt. 3768 at 2:6-7.  Belinda filed a timely notice of appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B).  We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court err in disallowing the Amended Claim?

**STANDARD OF REVIEW**

We review the bankruptcy court's legal conclusions de novo and its findings of fact for clear error.  See Allen v. US Bank, NA (In re Allen), 472 B.R. 559, 564 (9th Cir. BAP 2012).  We review the bankruptcy court's order disallowing the claim de novo.  See Continental Ins. Co. v. Thorpe Insulation Co.

7

(In re Thorpe Insulation Co.), 671 F.3d 1011, 1020 (9th Cir. 2012), cert. denied, 133 S. Ct. 119 (2012). See also Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.), 293 B.R. 489, 493 (9th Cir. BAP 2003) (issues related to disallowance are questions of law reviewed de novo). This case also involves contract interpretation; again, de novo review is appropriate. Simpson v. Burkart (In re Simpson), 366 B.R. 64, 70-71 (9th Cir. BAP 2007).

## DISCUSSION

The Bankruptcy Code sets forth the grounds for disallowance of proofs of claim primarily in section 502(b). See Heath v. Am. Express Travel Related Servs. Co., Inc. (In re Heath), 331 B.R. 424, 426 (9th Cir. BAP 2005). Section 502(b)(1) provides for disallowance of a claim that "is unenforceable against the debtor and property of the estate, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." The bankruptcy court's oral ruling articulated only one specific ground for disallowance; Belinda was not a third party beneficiary of the Purchase Agreement. Belinda disputes this conclusion, but she never addresses the bankruptcy court's general reference to other grounds set forth in the Motion and the resultant inclusion of CCP Section 580d as a basis for disallowance. We conclude, first, that the necessary application of CCP Section 580d is dispositive here. We then also conclude that the bankruptcy court correctly determined that Belinda was not a third party beneficiary of the Purchase Agreement entitled

8

to specific performance rights under California law.[11]

**CCP Section 580d Requires Disallowance of the Amended Claim.**

Merco Group cited CCP Section 580d in its Motion as grounds for disallowance. It argued that non-judicial foreclosure extinguished any indirect obligation it otherwise owed to Belinda on account of the Guaranty. Belinda did not respond directly to this argument prior to appeal either in writing or at oral argument.[12] The bankruptcy court, likely as a result, did not discuss this objection specifically in its oral ruling. But, it generally references the "other grounds explained in the motion" as a basis for its disallowance of the claim. Hr'g Tr. (May 11, 2012) at 3:23-24.

In her opening brief on appeal, Belinda addresses not CCP Section 580d, but her Guaranty's <u>Gradsky</u> waiver. In her reply brief, she responds more directly to Merco Group's CCP Section 580d argument, and states that she found no case authority providing that CCP Section 580d applies to the claim of a third party beneficiary. To the extent Belinda retained any right to dispute the CCP Section 580d basis for disallowance of the Amended Claim, these arguments fail to justify a reversal. Merco

_____

[11] To the extent that we misread the bankruptcy court's reference to other grounds as including CCP Section 580d, we note that we may affirm the bankruptcy court on any grounds supported by the record. <u>Com-1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.)</u>, 278 B.R. 189, 194 (9th Cir. BAP 2002).

[12] Belinda may not argue the inapplicability of CCP Section 580d for the first time on appeal. <u>Golden v. Chicago Title Ins. Co. (In re Choo)</u>, 237 B.R. 608, 613 (9th Cir. BAP 2002) (issues not raised at the trial court will not be considered for the first time on appeal).

9

Group argues that even if it "impliedly promised Belinda that it would pay the underlying debt, CCP Section 580d would still preclude her claim for reimbursement." Apl'e Brief at 10. We agree.

CCP Section 580d provides, in pertinent part, that:

> No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.

And it is well settled that CCP Section 580d: "prevents both the creditor and the guarantor from obtaining any deficiency judgment against the debtor after nonjudicial sale of the security." Union Bank v. Gradsky, 265 Cal. App. 2d at 41. And as the Gradsky court further noted:

> The Legislature clearly intended to protect the debtor from personal liability following a nonjudicial sale of the security. No liability, direct or indirect, should be imposed upon the debtor following a nonjudicial sale of the security. To permit a guarantor to recover reimbursement from the debtor would permit circumvention of the legislative purpose in enacting [CCP Section 580d].

Id. at 46.

Thus, when PNL foreclosed, CCP Section 580d extinguished all PNL's claims against Merco Group. And concurrently, CCP Section 580d also barred any Guaranty-based claim by Belinda against Merco Group based on California laws such as CC Section 2847.

The Guaranty contains extensive waivers of defenses by the

10

guarantor, Belinda, and includes a "<u>Gradsky</u> waiver" wherein Belinda acknowledged the impact of a non-judicial foreclosure on any rights to recovery against the borrower and agreed to be bound by her guarantee notwithstanding. Belinda asserts that she never waived her right to reimbursement from Merco Group under California law, despite the <u>Gradsky</u> and other suretyship waivers contained in the Guaranty. Without citation to legal authority, she argues that any waivers of reimbursement claims under the Guaranty were extinguished as a result of the provision in Merco Group's confirmed plan that allowed PNL to proceed to non-judicial foreclosure in full satisfaction of its claim. Belinda misses the point. The Guaranty's waivers are intended to protect PNL from an argument that a non-judicial foreclosure exonerates the Guaranty, precisely because foreclosure negatively impacts Belinda's rights against Merco Group. Belinda did not simply waive the right to assert suretyship defenses against PNL in the Guaranty; in addition, she acknowledged that a non-judicial foreclosure terminated all such rights. Again, non-judicial foreclosure did not revitalize Belinda's rights to recovery from PNL - it extinguished them. And as a result, the bankruptcy court correctly disallowed the Amended Claim.

**The Bankruptcy Court Did Not Err In Disallowing The Claim Notwithstanding Alleged Third Party Beneficiary Rights.**

Perhaps in recognition of the impact of CCP Section 580d on her ability to recover against Merco Group after a non-judicial foreclosure, Belinda also asserted rights to recovery as a third party beneficiary of the Purchase Agreement. CC Section 1559 permits a third party beneficiary to enforce a contract "made

11

expressly" for its benefit.  A court finds such express benefit where the contracting parties must have intended to benefit the third party and where such intent appears in the express terms of the contract.  <u>Bancomer, S.A. v. Superior Court</u>, 44 Cal. App. 4th 1450, 1458 (1996) (citation omitted).  Ascertaining the parties' intent is a question of contract interpretation.  <u>Hess v. Ford Motor Co.</u>, 27 Cal. 4th 516, 524 (2002).  A third party bears the burden of proving that the contractual performance it seeks was actually promised.  <u>Garcia v. Truck Ins. Exchange</u>, 36 Cal. 3d 426, 436 (1984).

Belinda argues on appeal that testimony and declarations establish that the parties to the Purchase Agreement intended her to benefit by Merco Group's assumption of the PNL debt and by having all obligations on the debt to PNL released.  But, she cites to no part of the record on appeal for any such testimony or declaratory evidence.  The Panel's review of the appellate record and its limited review of the extensive bankruptcy court docket also failed to uncover any such evidence.  Thus, the Panel must conclude that the bankruptcy court necessarily based its ruling on its review and interpretation of the only evidence properly before it, the Purchase Agreement itself and the relevant closing statements.[13]

_____

[13]  In her Opening Brief, Belinda states, without citation, that "the parties' testimony, including that of Richard Meruelo" established that the intent of the parties to the Purchase Agreement was to purchase the Property and to relieve Belinda of her "obligation on the Property otherwise owing to PNL."  Apl't Opening Brief at 12.  The record on appeal, however, contained no such testimony.  At oral argument, Belinda acknowledged the

(continued...)

12

Belinda argues that the Purchase Agreement, augmented by the closing statements, provides that: "[Merco Group] assumed the entire liability for the indebtedness with the objective of eliminating Meruelo's liability." Apl't Opening Brief at 12. Our review reveals major flaws in Belinda's position.

The Purchase Agreement was a contract between Seller and Merco Group for the sale and purchase of the Property. On its face, it contemplated that Merco Group would obtain new financing for its acquisition of the Property. Paragraph 5, "Financing Contingency," allows Merco Group until the closing date to satisfy itself as to its ability to obtain financing. The Purchase Agreement, in contrast, never referenced PNL, the

---

[13](...continued)
absence of such testimony in her designation of the record, and, further, never specified where on the docket such alleged testimony resides. The Panel conducted some appropriate docket review. But, it was not required to cull an unidentified piece of evidence from an undesignated and unidentified document; and this is particularly true given the fact that the docket here exceeds 3,700 entries. To the extent that this evidence exists, it is buried in the docket and must remain interred.

In particular, the Panel reviewed the docket and found no other hearing held on this matter (the first hearing was continued in advance on the parties' stipulation), including no evidentiary hearing. The transcript of the hearing contains no party testimony, only the short argument by counsel for Belinda and the bankruptcy court's terse ruling.

Thus, the record before us establishes that the only evidence submitted by Belinda to the bankruptcy court directly in support of her third party beneficiary claim is attached to the Amended Claim: a copy of the Purchase Agreement and the Seller's and Buyer's closing statements. Belinda's argument that the bankruptcy court also should have considered parol evidence, thus, must refer to the closing statements, which follow the copy of the Purchase Agreement attached to the Amended Claim; she discussed and provided nothing else.

13

existing PNL debt amount or loan terms, nor the Guaranty. Similarly, the due diligence documents listed in the incorporated exhibits to the Purchase Agreement do not include any documents associated with the existing PNL loan. Nor does the Purchase Agreement contain any mention of notice to, or request for consent to loan assumption from, PNL. Finally, Exhibit "C" to the Purchase Agreement, the "Standard Provisions", contains an integration clause and the requirement that all amendments be in writing. The only reference to existing financing, by logical inference, is the line item in the closing statements: "Assumption" and the amount credited toward the $20,000,000 purchase price: $8,763,304.85.

Obviously, Merco Group's acquisition of new financing and related retirement of the existing PNL debt on close of escrow would have satisfied Belinda's obligations to PNL. As Belinda alleges, however, and as the closing statements evidence, Merco Group, instead, took the Property subject to the existing PNL debt. The Purchase Agreement contained no provisions addressing Belinda's obligations to PNL under the Guaranty and no expressed intent to benefit Belinda directly. And the closing statements are similarly silent as to Belinda and the Guaranty. And there is no other evidence before us on appeal. On this record, there is no evidence of express intent to benefit Belinda directly and in her capacity as a guarantor. We, thus, determine that the bankruptcy court correctly found that Belinda did not meet her burden of proving third party beneficiary status in relation to the Purchase Agreement and for CC Section 1559 purposes.

But even if extra-contractual evidence of intent existed,

14

beneficiary status of the type that allows specific performance under CC Section 1559 does not exist here, because the Purchase Agreement itself is silent on this point.  CC Section 1559 allows certain third party beneficiaries to compel specific enforcement of a contract between other parties.  It does not provide enforcement rights to all third parties who derive some incidental benefit from a contract.  The statute provides real party in interest status only for a narrow category of third party beneficiaries.

In order for a court to find third party beneficiary standing under CC Section 1559, the third party must be more than a party who derives some benefit from the contract; instead, it must be expressly clear from the face of the contract that the party is an intended beneficiary.[14]  Expressly, for purposes of CC Section 1559 means: ". . . in an express manner; in direct or unmistakable terms; explicitly; definitely; directly." R.J. Cardinal Co. v. Ritchie, 218 Cal. App. 2d 124, 135 (1963). Here, the Purchase Agreement never mentions Belinda, and the bankruptcy court did not err in finding that there was no express intention to contract for her benefit.  Put another way, the bankruptcy court correctly found that the express intent of the Purchase Agreement was to benefit the Seller through the sale and not to benefit Belinda through an assumption.  The bankruptcy court, thus, correctly determined that CC Section 1559 does not

---

[14]  A classic example of a contract allowing third party beneficiary enforcement under CC Section 1559 is a will.  The heirs, who are expressly named therein, may bring an action requiring specific performance.  Sonnicksen v. Sonnicksen, 45 Cal. App. 2d 46, 53 (1941).

15

allow her to specifically enforce the Purchase Agreement.

Cases cited by Belinda do not require a different result. R.J. Cardinal Co. involved an oral contract wherein the defendants allegedly expressly promised to pay a debt owed to the plaintiff-third party creditor. 218 Cal. App. 2d at 133. Here, there is no evidence or even argument that the contract at issue included a direct obligation to pay Belinda or to make payment on her behalf. And, in any event, the appellate court in R.J. Cardinal Co. reversed based on the exclusion of evidence relevant to the alleged lack of consideration for the alleged third party contract. Id. at 137. The facts are clearly distinguishable, and the case fails to advance Belinda's position.

Ralph C. Sutro Co. v. Paramount Plastering, Inc., 216 Cal. App. 2d 433 (1963) involved a construction loan agreement. Belinda cites Sutro for the proposition that in determining third party beneficiary status a contract: "should be read in light of the circumstances under which it was entered." Apl't Opening Brief at 11. This Panel agrees, but does not find this unremarkable assertion helpful to Belinda here. The Sutro Co. court determined that it was clear that the construction loan agreement at issue was made for the benefit of not only the borrower, but also for the benefit of the laborers and materialmen who completed the construction, as it expressly conditioned loan advances on a showing that the laborers and materialmen were paid. Id. at 437. Again, the contract at issue in Sutro Co. expressly named the third party plaintiffs - at least by class; and this was sufficient. Id. Here, again, the

16

Purchase Agreement is silent.

Finally, Schauer v. Mandarin Gems of Cal., Inc., 125 Cal. App. 4th 949 (2005), involved an action by an ex-wife to recover for breach of a warranty in the contract between her ex-husband and a jeweler that arose in connection with the ex-husband's purchase of her engagement ring. The Schauer court echoed the definition of "expressly" used by the R.J. Cardinal Co. court, and added the requirement that the intent to create third party beneficiary status must be expressly manifested by the contracting parties. Id. at 957-58. The Schauer court then concluded that the promisor (in that case the jeweler) must have understood that a third party beneficiary with specific enforcement rights was intended and had no difficulty finding that a seller of engagement rings would understand that the buyer intended to gift the ring to his bride-to-be. Id. at 958. Here, there is no such logical leap that can or should be made to overcome the lack of a direct reference to Belinda or the Guaranty in the Purchase Agreement itself. Clearly, the Seller intended to benefit itself and to directly enjoy the benefits of the sale of the Property. Belinda's benefit, if any in relation to her status as Guarantor, was at best incidental. And the bankruptcy court correctly determined that this was not enough for CC Section 1559 purposes.

Finally, we note that the specific performance that Belinda desires - payment in full of the PNL loan – is not expressly required by the Purchase Agreement. Nothing in the Purchase Agreement or closing statements can reasonably be interpreted to require that the debt, once assumed, be paid off in full by Merco

17

Group as would be necessary to relieve Belinda of obligations under the Guaranty. Debt assumption is not the same as a promise to pay in full. Nothing contained in the Purchase Agreement would prevent Merco Group from subsequently selling the Property, as had the Seller, subject to the existing financing with PNL and without release of Belinda's obligations under the Guaranty.[15]

The bankruptcy court specifically disapproved Belinda's third-party-beneficiary theory, finding that the "intention wasn't to relieve [Belinda] of the debt, it was to acquire the property." Hr'g Tr. (May 11, 2012) at 3:21-22. The record before the bankruptcy court was sufficient for it to properly make this determination, as a matter of law and fact. Here, the contract at issue does not expressly state any intention to benefit Belinda. And, as noted above, there is no parol evidence available to the Panel to establish that this was the parties' intention. Even if it was, however, the argument would fail given contractual silence on this point. Parol evidence may be appropriate to determine the parties' intent, but CC Section 1559 requires that the contract be unambiguous on this point on its face. Here, silence leads inescapably to a determination of facial ambiguity on this point. And here, the reliance on CC Section 1559 appears to be nothing other than a less than subtle attempt to recover a deficiency from the borrower where such recovery is absolutely barred by CCP Section 580(d).

---

[15] Belinda did not retain any rights limiting Merco Group's ability to reassign, and in the Guaranty she generally agreed that PNL could allow such assumption without exonerating the Guaranty.

18

Therefore, the bankruptcy court properly disallowed Belinda's claim to the extent based on this theory.

And having concluded that CCP Section 580d bars Belinda's claim against Merco Group, in any event, and finding no error in the bankruptcy court's conclusion that Belinda's claim based on alleged third party beneficiary standing also fails, we need not address Belinda's's remaining arguments on appeal.[16]

## CONCLUSION

For all of the reasons set forth above, we hold that the bankruptcy court did not err when it disallowed Belinda's Amended Claim, and we AFFIRM.

---

[16] Belinda argues that the bankruptcy court should have analyzed the allegedly paid attorneys' fees claims separately from the as yet unpaid indemnification claim amount. Any such error would be harmless in light of this disposition, and we generally ignore harmless error. See Van Zandt v. Mbunda (In re Mbunda), 484 B.R. 344, 2012 Bankr. LEXIS 5940 *20 (9th Cir. BAP 2012)(citing Litton Loan Serv'g, LP v. Garvida (In re Garvida), 347 B.R. 697, 704 (9th Cir. BAP 2006)).
In addition, Belinda dedicated a substantial part of her opening brief on appeal in response to Merco Group's argument, raised for the first time on reply before the bankruptcy court, that it should not be required to pay claims relating to work by Belinda's attorney due to a conflict of interest. Appellee Merco Group did the same. Merco Group also alleged that the bankruptcy court made findings on this issue, and it cited to multiple pages of the transcript of the hearing that was held on May 11, 2012, in support. This discussion, however, actually occurred in connection with another claim objection, which is the subject of a separate appeal heard by this Panel, in CC-12-1304. At oral argument, the parties confirmed that such citations were the result of confusion. The argument adds nothing to our analysis and conclusions here.