In re Jose A. GARVIDA and Betty
C. Garvida, Debtors.

Litton Loan Servicing, LP, Appellant,

v.

Jose A. Garvida; Betty C.
Garvida, Appellees.

BAP No. WW–05–1494–KPaN.
Bankruptcy No. 04–17846.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on June 23,
2006 at Seattle, Washington.

Filed—July 31, 2006.

Daniel J. Goulding, San Diego, CA, for Litton Loan Servicing, LLP.

Larry B. Feinstein, Vortman & Feinstein, Seattle, WA, for Jose and Betty Garvida.

Before: KLEIN, PAPPAS, and NIELSEN,[1] Bankruptcy Judges.

KLEIN, Bankruptcy Judge.

The underlying question turns on who bears the burden of proof and the correlative risk of nonpersuasion regarding the amount owed on a disputed claim in a bankruptcy case. The answer is that the substantive burden of proof is the same as under applicable nonbankruptcy law and is not affected by the evidentiary presumption created by Federal Rule of Bankrupt-

---

1. Hon. George B. Nielsen, Jr., United States Bankruptcy Judge for the District of Arizona, sitting by designation.

cy Procedure 3001(f) that operates to shift the burden of production, but not the burden of proof.

The appellant mortgage service company, which does not contest that nonbankruptcy law allocates to it the burden of proof on the question of the correct mortgage payoff amount, declined to provide the accounting that the court required as proof that it was entitled to $18,286.42 more than what the evidence suggested the correct payoff amount should be. We AFFIRM the order that operated to sustain an objection to claim.

### FACTS

The debtors filed a chapter 13 bankruptcy case in June 2004 to rescue their residence in Seattle, Washington, from default on a mortgage loan serviced by Litton Loan Servicing, LP ("Litton") on behalf of Chase Manhattan Mortgage Corporation.

Litton filed a proof of claim asserting that the total amount of the debt at the time of filing was $238,188.46 (unpaid principal of $223,960.91 and accrued arrearage of $14,227.55) on which interest was accruing at a contract rate of 8 percent and objected to the debtors' initial plan on the basis that it did not provide for payments sufficient to pay the Litton claim.

Accepting Litton's figures, the debtors amended their plan to make mortgage payments through the plan. The plan proposed to pay $2,500.00 per month to the trustee, who would pay Litton the contractual mortgage payments of $1,882.02, and to pay $395.21 per month to retire the $14,227.55 arrearage. The 1st Amended Plan, to which Litton did not object, was confirmed by order entered October 15, 2004, and, inexplicably, by a second order entered June 14, 2005.

The debtors made their regular plan payments that included their mortgage payments. Litton received a total of $26,348.28 ($22,584.24 by June 30, 2005) from the chapter 13 trustee on account of the mortgage loan through August 2005.

Meanwhile, in December 2004, the debtors negotiated a refinance with another lender on terms more favorable than the Litton mortgage (the residence appraised at $350,000) and made a motion for authority to refinance and pay Litton in full.

The court granted permission to refinance by order entered December 22, 2004, which order (later amended twice to change the lender) required the escrow company to pay off the plan in full.

The refinance escrow closed on June 30, 2005, on the mistaken assumption (no fault of the debtors[2]) that Litton was owed $213,372.60. After the closing, Litton rejected the escrow payoff check and demanded an additional $30,004.22, which at the time equated with a total debt of $265,961.06 (= $213,372.60 + $30,004.22 + $22,584.24).

Assuming that the Litton demand was correct, the debtors proposed a plan modification (2nd Amended Plan) on July 12, 2005, that would allow them to pay their new mortgage outside the plan and pay Litton through the plan $1,000.00 per month without interest until the debt was retired. Litton objected to the omission of a provision for payment of interest on the balance.

---

2. Litton did not deny it made the mistake. The closing agent: "Litton gave an incorrect payoff statement." Closing Documents on Refinance at 2. Litton's Payoff Department Supervisor wrote: "Your closing agent, [name], has used a payoff statement reflecting payoff figures for another account and this statement was used to close your transaction." *Id.* at 3.

At the initial confirmation hearing on the modification, on October 5, 2005, the debtors' counsel represented that they would adjust their plan to pay whatever an accounting showed was owed to Litton. The court directed Litton to provide an accounting by October 12 and thereupon continued the hearing to October 19.

At a second hearing, on October 19, the court was dissatisfied with the sketchy information that Litton provided, which the court regarded as unintelligible.[3] It continued the hearing to enable Litton to prove the correct amount. It also persuaded Litton to accept the remaining escrow proceeds of $213,671.85 as partial payment. Thus, postpetition payments to Litton totaled $240,020.13 ( = $213,671.85 + $26,348.28).

Acceding to Litton's demand for interest, the debtors proposed a new modification (3rd Amended Plan) that was set for hearing on November 16, 2005. Monthly plan payments of $1,950.00 would be used to pay Litton under the contractual terms (principal, interest, and escrow) of the mortgage to extinguish the deficit, pegged at $22,348.36 in the plan modification.

Litton filed an objection to the 3rd Amended Plan, contending that the balance owed was $33,435.46, which equates with a total debt of $273,455.59 (= $240,020.13 + $33,435.46), and filed an amended proof of claim for $33,435.46. It did not, despite the court's request, support the proof of claim with an accounting.

At the November 16 hearing, in effect objecting to the claim, the debtors proffered materials received from Litton that indicated the total owed was $15,149.04, which equates with a total of $255,169.17 (= $240,020.13 + $15,149.04). When the court again asked Litton for a breakdown of numbers so it could analyze the debtors' version ($255,169.17) against Litton's version ($273,455.59), Litton's counsel merely responded that Litton was working from a "different" payoff quotation than debtors' counsel.

Reasoning that Litton had not carried its burden of proof after being given multiple opportunities to do so, the court ruled that the remaining amount owed was $15,149.04, in effect sustaining the debtors' objection to any greater sum, and that it would confirm a plan revised to provide for payment of that sum, instead of the $22,348.36 stated in the plan modification.[4]

Litton did not object to the method of taking evidence or to the manner in which the claim objection was resolved.

---

3. The court told Litton's counsel:
 THE COURT: ... [W]hat I'm looking for is how does [debtors' counsel] know what makes up the $30,000? If it's just a matter of inputting this stuff into a spreadsheet and having the number be spit out, that's one thing. But it's quite another if it's made up of this plus legal fees, plus inspection fees plus a bunch of other stuff that's not disclosed.
 Tr. 1/19/05 at 8.

4. The court's ruling was:
 THE COURT: Okay. Well, I don't get it. And so, [debtors], I'm going to find in your favor. I asked for this principal to be broken down so that I could see what it was, and yet they filed an amended claim that just had the same number on it that isn't broken down, $33,435.46.
 And I did look at the payoff. I have it right here with me. I did look at the payoff with the higher number. And it still doesn't explain to me—the difference here is some escrow, late charges, corporate advances to get up to 244. And I don't have any idea what that's about. And [creditor's counsel] has added them in, a bunch of that stuff.
 So I'm going to find that [debtors' counsel], your number is the number. And I will confirm the plan if your client agrees to pay that number.
 Tr. 11/16/05 at 9.

An order was entered fixing the balance of Litton's claim at $15,149.04 as of December 1, 2005, and confirming the modified plan providing for plan payments sufficient to fund the unpaid balance with monthly payments to Litton of $1,648.95 at 8 percent interest. This timely appeal ensued.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

1. Whether an objection to claim could be accomplished through a chapter 13 plan instead of a formal objection under Federal Rule of Bankruptcy Procedure 3007.

2. Whether the court correctly concluded that the creditor did not satisfy its burden of proof.

## STANDARD OF REVIEW

■■ We review issues of law, including interpretation of the Bankruptcy Code and rules of procedure, de novo and review findings of fact for clear error. *Shook v. CBIC (In re Shook)*, 278 B.R. 815, 820 (9th Cir. BAP 2002). Whether procedure employed comports with requirements of due process is a question of law that we review de novo. *Garner v. Shier (In re Garner)*, 246 B.R. 617, 619 (9th Cir. BAP 2000). Whether an evidentiary presumption has been rebutted is a question of fact reviewed for clear error. *Garner*, 246 B.R. at 619.

## DISCUSSION

We deal with the implications of a procedural error and then address the question of the burden of proof on a proof of claim.

I

■■ It ordinarily is procedural error to resolve objections to claims in plan confirmation proceedings. Indirectly resolving claim objections confuses two-party claim objection issues with multi-party plan confirmation issues. Hence, the confirmation of a plan providing for payment on a claim in a particular amount does not trump a proof of claim for a higher amount without compliance with standard claim objection procedure.

■ Bankruptcy Code § 502(a) provides that a proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The specific requirement of § 502(a) that there be an objection in order to defeat a claim that is "deemed allowed" controls the more general provision in Bankruptcy Code § 1327(a) that the provisions of a confirmed plan bind the debtor and all creditors. 11 U.S.C. § 1327(a); *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989); *id.* at 529, 109 S.Ct. 1981 (Scalia, J., concurring); *Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy)*, 130 B.R. 318, 321 (9th Cir. BAP 1991) (" § 502(a) is the statutory provision which specifically governs questions of claims allowance and, consequently, should control over the more general policy considerations embodied in § 1327(a)"); 9 Collier on Bankruptcy ¶ 3007.01[3] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2006) ("Collier").

■ In other words, § 1327(a) binds the parties as to the amounts to be distributed under the chapter 13 plan but does not alter the allowed amount of the claim, which is what the trustee must pay. *Compare Hobdy*, 130 B.R. at 321, *with id.* at 322 (Perris, J., concurring). Hence, a proof of claim at variance with the plan may trigger a claim objection or plan mod-

ification. *In re Kincaid,* 316 B.R. 735, 741–42 (Bankr.E.D.Cal.2004).

Federal Rule of Bankruptcy Procedure 3007 prescribes the procedure for making an objection pursuant to § 502(a). FED. R. BANKR. P. 3007; 9 COL-LIER ¶ 3007.RH. An objection is to be in writing and must be filed. FED. R. BANKR. P. 3007. An objection is a "contested matter" governed by Federal Rule of Bankruptcy Procedure 9014, unless a counterclaim is joined with the objection, in which event it becomes an adversary proceeding. *Id.* Advisory Comm. Note.

Although an objection to claim under Federal Rule of Bankruptcy Procedure 3007 is required to contest a claim, it nevertheless is possible to object to a creditor's claim through a proposed plan, so long as proper notice is given. *Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.),* 293 B.R. 489, 497–500 (9th Cir. BAP 2003) (chapter 11); *Shook v. CBIC (In re Shook),* 278 B.R. 815, 824 (9th Cir. BAP 2002)(allowed claim amount can be fixed at confirmation if creditor receives clear notice); *Hobdy,* 130 B.R. at 320–21 (same); *Dresser Indus., Inc. v. Rite Autotronics Corp. (In re Rite Autotronics Corp.),* 27 B.R. 599, 602 (9th Cir. BAP 1982) (same); *cf., Brady v. Andrew (In re Commercial W. Fin. Corp.),* 761 F.2d 1329, 1336 (9th Cir.1985).

Considerations of due process mandate caution when ersatz procedure is used and require that the creditor receive specific notice and be afforded the same opportunity to litigate one-on-one, as would occur in a straightforward claim objection under Rule 3007. *Dynamic Brokers, Inc.,* 293 B.R. at 497.

In this instance, it is unambiguous that the debtors and Litton litigated the plan confirmation as if it was a claim objection proceeding. Indeed, this plan confirmation was strictly a two-party dispute. Beginning with the second amended plan filed on July 12, 2005, the parties litigated one-on-one regarding the correct payoff amount in the same manner as they would have under Rule 3007. Litton had notice that the debtors objected to its payoff amount of $33,435.46 from the outset, and the bankruptcy court requested, on multiple occasions, that Litton provide a breakdown of its claim so that it could determine the value of the claim. Litton actively participated in the process by trying to persuade the court that it was entitled to the amount in its amended proof of claim, but refusing to proffer evidence to validate its claim.

Nor did Litton object to or question the procedure being utilized in the bankruptcy court and only raises its procedural challenge for the first time on appeal.

In view of the litigation choice by Litton not to insist on a separate claim objection proceeding and in view of the close resemblance of the two-party confirmation proceeding to a claim objection proceeding, Litton has waived the issue. Since it is purely a two-party dispute that was resolved without an effect on other creditors, the expectations of other parties were not affected by the incorrect procedure.

Moreover, we do not reverse for reasons that do not affect the substantial rights of parties. 28 U.S.C. § 2111; FED. R. BANKR. P. 9005, *incorporating* FED. R. CIV. P. 61; *Donald v. Curry (In re Donald),* 328 B.R. 192, 203–04 (9th Cir. BAP2005). Thus, the procedural error in this instance was rendered harmless when the parties litigated the dispute as if it was a claim objection.

## II

The crucial question is whether the court correctly concluded that Litton did

not satisfy its burden of proof. The analysis requires that one distinguish between burden of proof and burden of going forward.

### A

■ The burden of proof is a substantive aspect of a claim that comprises an essential element of the claim itself. *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20–21, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

### 1

■ Under the "basic federal rule in bankruptcy," nonbankruptcy (usually state) law governs the substance of claims. *Id.* at 20, 120 S.Ct. 1951; *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); 9 COLLIER ¶ 3001.09. Thus, the bankruptcy trustee in *Raleigh* had the burden of proof on a claim objection because Illinois law placed the burden on the taxpayer debtor. *Raleigh*, 530 U.S. at 20, 120 S.Ct. 1951.

### 2

■ The general common law rule regarding payment and burdens of proof subdivides into successive burdens. First, once there is a prima facie showing of an indebtedness or obligation to pay, the burden of proving the facts regarding payment is on the party who alleges payment, ordinarily the obligor or debtor. 70 C.J.S. *Payment* § 73 (collecting cases); 60 AM. JUR. 2D *Payment* § 116 (collecting cases).

■ Second, under the common law rule, once the facts regarding payment have been demonstrated, the creditor (obligee) has the burden of proving that the payment was not effective to extinguish the debt or to satisfy the lien. 70 C.J.S. *Payment* § 73 ("Once payment is shown, the burden shifts to the obligee [creditor] to show why the payment was ineffective

to cancel the debt"); 60 AM. JUR. 2D *Payment* § 118 ("burden of proving payment is on the party who pleads that defense, and once this is proven, the burden of proof shifts to the obligee to show why the payment was ineffective to cancel the debt"); *id.* § 116 ("creditor has the burden of proving that … satisfaction of a lien on realty did not result from a payment of the underlying debt"). In the context of a mortgage, this means that the creditor has the burden of proving the final mortgage payoff amount, especially the validity of charges other than principal and interest.

### 3

■ Washington law follows the general common law regarding payment and burdens of proof. *W. Coast Credit Corp. v. Pedersen*, 64 Wash.2d 33, 390 P.2d 551, 553 (1964) (approving general common law rule); *U.S. Bank Nat'l Ass'n v. Whitney*, 119 Wash.App. 339, 81 P.3d 135, 140–42 (2003), *rev. denied*, 152 Wash.2d 1021, 101 P.3d 108 (2004) (applying common law).

■ The debtor demonstrated that payments to Litton made during the bankruptcy case were $240,020.13 and conceded, using numbers obtained from Litton, that an additional $15,149.04 was owed. The $255,169.17 total is facially consistent with the amount of the note, plus interest at the contract rate. This plainly satisfied the debtors' burden to demonstrate payment.

Hence, the question under Washington law is whether Litton carried its burden of proof to demonstrate that the debtors' payments that were consistent with the principal and interest provisions of the note were ineffective to cancel the debt and ineffective to satisfy the lien on realty. Specifically, Litton must prove why $255,169.17 was inadequate to extinguish the principal debt of $223,960.91, together

with the $14,227.55 prefiling arrearage and postpetition interest at 8 percent for seventeen months. It is at this phase of proof that Litton must specifically justify any application of funds other than to principal and interest that would support an additional obligation of $18,286.42, i.e. a total debt of $273,455.59.

## B

Unlike the substantive burden of proof, the burden of going forward is primarily a procedural matter pertaining to the order of presenting evidence. The burden of proof is often outcome determinative, the burden of going forward is not.

### 1

Federal Rule of Bankruptcy Procedure 3001(f) prescribes that the evidentiary effect of a proof of claim that is executed and filed in accordance with the rules constitutes "prima facie evidence of the validity and amount of the claim." *Garner*, 246 B.R. at 621.[5] Litton contends that Rule 3001(f) operated to place the burden of proof on the debtor. Not so.

The Supreme Court has clarified that the Rule 3001(f) "prima facie evidence" language does not address the burden of proof in an objection to claim proceeding.

**5.** Rule 3001(f) provides:

(f) Evidentiary Effect. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim. Fed. R. Bankr.P. 3001(f).

**6.** The Supreme Court explained:

The Bankruptcy Rules are silent on the burden of proof for claims; while Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim (the name for the proper form for filing a claim against a debtor) is "prima facie evidence of the validity and amount of the claim," this rule does not address the burden of proof when a trustee disputes a claim. The Rules thus provide no additional guidance.

*Raleigh*, 530 U.S. at 22 n. 2, 120 S.Ct. 1951.[6]

It follows that, after *Raleigh*, Rule 3001(f) cannot be construed as allocating the burden of proof and, instead, operates merely as an evidentiary presumption that is rebuttable.

The evidentiary presumption of a prima facie case operates to shift the burden of going forward but not the burden of proof. *Garner*, 246 B.R. at 622; *Diamant v. Kasparian (In re So. Cal. Plastics, Inc.)*, 165 F.3d 1243, 1248 (9th Cir.1999)(although the creditor bears the ultimate burden of persuasion, the debtor must come forward with evidence to rebut the presumption of validity); 9 COLLIER ¶ 3007.01[1] ("once this burden of going forward to overcome the presumption is met, the ultimate burden is on the claimant"). Hence, at best, Litton's $33,435.46 proof of claim was entitled to the Rule 3001(f) evidentiary presumption, which is capable of being rebutted.

### 2

Assuming, without deciding, that the evidentiary presumption did apply,[7] the mechanics of what it takes to

*Raleigh*, 530 U.S. at 22 n. 2, 120 S.Ct. 1951.

**7.** Arguably, the $33,435.46 proof of claim did not comply with the rules so as to qualify for the Rule 3001(f) evidentiary presumption. It was either a second proof of claim or amended the initial $238,188.46 proof of claim. On the claim form, Litton ambiguously tried to have it both ways; it checked the box designating the claim as replacing the earlier claim and checked the box specifying that the claim amended the earlier claim. Moreover, the claim asserted that the amount owed "at the time the case" was filed was $33,435.46, which does not square with the uncontested facts. Nor is there an explanation demonstrating how $238,188.46 became $33,435.46 (especially after $240,020.13 was paid postpe-

rebut the Rule 3001(f) presumption are driven by the nature of the presumption as "prima facie" evidence of the claim's validity and amount. *Garner*, 246 B.R. at 621–22. The proof of claim is more than "some" evidence; it is, unless rebutted, "prima facie" evidence. *Id.* One rebuts evidence with counter-evidence. *Id.*

 Again assuming that the evidentiary presumption applied, the debtors satisfied the burden of going forward by proffering counter-evidence proving payment of $240,020.13 and by credibly calling into question Litton's assertion that the outstanding balance exceeded $15,149.04. Specifically, the debtors submitted a declaration that explained why the principal balance was $15,149.04, including a supporting table reflecting the payments they had made that led to the $15,149.04 balance.[8] They also supplied a loan modification statement received from Litton that provided the principal balance on which they had based their calculations.[9] Moreover, pursuant to the court's request, the debtors submitted the closing documents regarding the refinance of their residence, which included, inter alia, checks from the chapter 13 trustee to Litton totaling $24,368.21 for postpetition payments and conflicting payoff statements. Thus, the debtors satisfied their burden of going forward.

 Once the debtors, as the objecting party, produced counter-evidence rebutting the claim, the burden of going forward would have shifted to Litton in the sense that it could provide further evidence to support its claim. The ultimate burden of proof as to the claim's validity and amount in excess of the payments proved by the debtors, however, always remained on Litton. *Garner*, 246 B.R. at 622; *Diamant*, 165 F.3d at 1248; *Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc.)*, 96 B.R. 275, 277 (9th Cir. BAP 1989).

 Litton, in this instance, did not meet its burden of proof. Although Litton's $33,435.46 proof of claim operated to increase its total claim to $273,455.59, it provided no accounting to establish how its initial claim of $238,188.46 at the beginning of the case grew by $35,267.13 (= $273,455.59—$238,188.46) when interest on principal could not have accrued at a monthly rate higher than $1,493.07 (= $223,960.91 principal × .08 ÷ 12). Nor did Litton account for how it applied the $240,020.13 that it received during the case. Litton's evidence was merely a list of payments and a principal balance that was neither itemized nor explained and that the court regarded as unintelligible. We agree with the trial court that what Litton provided was gibberish that fell short of its burden of proof.

### C

In the end, this appeal boils down to the classic "jury" question of choosing between competing evidence. The evidentiary presentation (to which Litton did not object) had been made. After Litton had received multiple opportunities to prove its case with more specific evidence, the court reached the point at which the evidentiary record was closed. The evidence was in

---

tition). A claim that is not regular on its face does not qualify as having been "executed and filed in accordance with these rules." Fed. R. Bankr. P. 3001(f).

8. Although the debtors' declaration was hearsay, Litton did not object to it as evidence or to the procedure employed. If it had object-ed, then Rule 9014(d) would have required a trial-type hearing. Fed. R. Bankr. P. 9014(d).

9. A document prepared by one's adversary is not hearsay. Fed. R. Evid. 801(d)(2). Litton did not question the authenticity of the document or otherwise object.

conflict. The trier of fact chose to believe the debtors' evidence, which we agree was more comprehensible than Litton's evidence, and determined the correct mortgage payoff amount on that basis. This was not clear error.

Since Litton, as claimant creditor, had the burden of proof as to the correct mortgage payoff amount following proof of the $240,020.13 in payments made for the account of the debtor and did not persuade the trier of fact by a preponderance of the evidence, it follows that Litton did not satisfy its burden of proof. It had its due process opportunity and lost.

On appeal, an appellant has the appellate burden of persuading the appellate tribunal that the trial court's factual conclusion regarding the outstanding balance of the mortgage loan was infected by clear error. *Gardner v. California*, 393 U.S. 367, 370, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969) ("a petitioner carries the burden of convincing the appellate court that the hearing before the lower court was either inadequate or that the legal conclusions from the facts deduced were erroneous"); *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 832 (9th Cir. BAP 2006). After carefully reviewing the record, we are not so persuaded. Hence, Litton has not carried its appellate burden.

### CONCLUSION

For the foregoing reasons, we AFFIRM.