FILED

NOT FOR PUBLICATION

APR 16 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. SC-18-1190-SLG |
| JORDANA BAUMAN, | Bk. No. 3:17-bk-06250 |
| Debtor. | |
| JORDANA BAUMAN, | |
| Appellant, | |
| v. | MEMORANDUM* |
| DAVID L. SKELTON, Chapter 13 Trustee, | |
| Appellee. | |

Argued and Submitted on March 26, 2020

Filed – April 16, 2020

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Christopher B. Latham, Bankruptcy Judge, Presiding

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Appearances:    Appellant Jordana Bauman argued pro se.

_____

Before: SPRAKER, LAFFERTY, and GAN, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1]debtor Jordana Bauman appeals from orders dismissing her bankruptcy case and denying her motion under Rule 9023. Because none of Bauman's arguments on appeal have merit, we AFFIRM.

## FACTS

**A.    Bauman's initial schedules and plan.**

Bauman commenced her fifth bankruptcy since 2010 by filing a voluntary chapter 13 petition on October 16, 2017.[2] The bankruptcy documents she filed were largely blank or incomplete. In her schedules, she

_____

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure. All "Local Rule" references are to the Local Bankruptcy Rules for the Southern District of California.

[2] Prior to this bankruptcy filing, Bauman filed four other bankruptcies in the Southern District of California: (1) Case No. 10-18930-PB7; (2) Case No. 11-11223-CL13; (3) Case No. 13-01890-CL7; and (4) Case No. 16-00301-CL13. Subsequent to her 2017 bankruptcy filing, Bauman filed her sixth bankruptcy case, Case No. 18-02875-CL13. With the exception of Case No. 13-01890-CL7, all of her bankruptcies eventually were dismissed. Bauman took numerous appeals from these dismissals. In all but one instance, her appeals were unsuccessful. After the one successful appeal, the bankruptcy court later dismissed the case a second time, and her appeals from that case dismissal also were unsuccessful.

listed the value of many of her assets as unknown, claiming that her ex-husband had all of the relevant records and indicating that he would not cooperate in providing her with the necessary records. Even so, she still listed assets valued at several million dollars.

As for her creditors, she identified the Internal Revenue Service ("IRS"), the Franchise Tax Board ("FTB"), her divorce counsel, and an attorney service as her only unsecured creditors though she only stated amounts owed for the IRS's and FTB's unsecured claims. Wells Fargo was the only secured creditor listed in her schedules, and she listed its claim as disputed in the amount of $365,000.00.

Bauman's Statement of Monthly Income and Calculation of Commitment Period was essentially blank, though she did indicate that her applicable commitment period was five years. Similarly, she filed a blank Calculation of Your Disposable Income, again noting that her financial records were held by others. Meanwhile, in her Schedules I and J she listed $3,000.00 per month in retirement income, but monthly expenses of $7,150.00.

In her initial plan, Bauman left much of the required form blank. But she did specify that, in lieu of making payments to the chapter 13 trustee, she anticipated acting as her own "disbursing agent." Therefore, she stated that she would make $0 in estimated payments over the course of her plan term.

The plan identified Wells Fargo as a secured creditor with a claim amount of $230,370.00. But Bauman did not propose any payments to the secured creditor either. Though she did not list her brother Mel Marin as a secured creditor in her schedules, she included him in her plan as a claimant with a lien on her real property. She did not specify any amount for this lien or the property encumbered. While she did not propose making any payments to the trustee, she oddly proposed that the trustee would pay her $3,200.00 monthly in domestic support obligations.

Bauman's plan disclosed priority claims owed to the IRS for $28,810.00 and to the the FTB for $4,784.00. But the plan did not provide for payments to either of these priority creditors.

Within her plan Bauman calculated that $10,057.00 would be available to pay her general unsecured creditors in a chapter 7 bankruptcy. Bauman separately classified the IRS's unsecured, nonpriority claim for $8,006.00 and the FTB's unsecured, nonpriority claim for $2,051.00. Her plan stated that these amounts would be paid in full over the life of the plan even though the plan provided for no payments.

At the end of her plan, Bauman attached four pages of nonstandard provisions. Of particular note, Bauman stated that she contested each and every claim mentioned in her plan and that her statement of dispute constituted her formal objection to each and every claim against her. Additionally, she reiterated that she was electing to self-disburse any

4

payments on any claims that ultimately might be allowed over her objections, that she rejected the trustee as a disbursing agent, and that she would not make any plan payments unless and until each claims dispute was resolved against her. She further indicated that any necessary payments would be funded from whatever litigation recoveries she obtained from her husband or others.

## B.     Wells Fargo's plan objections.

Wells Fargo objected to Bauman's plan.[3] It noted that the plan provided for no payments on account of its claim, for the debtor to act as the disbursing agent, and excluded the trustee from administering the plan. The court sustained Wells Fargo's objections, but also granted Bauman leave to amend. The court required Bauman to file her amended plan by February 13, 2018.

## C.     The trustee's plan objection and motion to dismiss.

The day after the hearing on Wells Fargo's objections, January 18, 2018, David Skelton, the chapter 13 trustee, filed a lengthy objection to the initial plan and also moved to dismiss the case. The objection and motion to dismiss were noticed for hearing on February 28, 2018. As Skelton put it,

---

[3] Actually, Wells Fargo filed two objections to the plan, each by a different counsel, within a day of each other. One plan objection pertained to a claim for roughly $167,000 arising from a loan secured by a senior deed of trust against Bauman's residence on Albatross Street. The other plan objection pertained to a claim for roughly $240,000 arising from a line of credit, also secured by her Albatross Street residence.

dismissal was justified under § 1307(c)(1) for prejudicial delay and under § 1307(c)(4) for failure to timely commence plan payments. In addition, Skelton said that dismissal was appropriate under §§ 521(a)(1)(B)(iv) and (e)(2)(B) for failure to provide copies of payment advices and federal tax returns.

As for Skelton's plan objections, they were numerous. Generally speaking, Skelton observed that Bauman failed to provide proof of the amount and source of her income and failed to adequately provide for any of her creditors. Skelton further noted that Bauman's plan was internally inconsistent and that her schedules and plan contained numerous omissions and errors. Nor was the plan feasible, administrable, or comprehensible. In particular, Skelton pointed to the provision requiring him to disburse $3,200.00 per month in domestic support obligations to Bauman. He also pointed to the provisions naming Bauman as the disbursing agent and omitting any trustee's fees. As Skelton additionally noted, Bauman's nonstandard provisions contemplated lots of litigation but no payments for an indefinite period of time. In light of all of the above, and in light of Bauman's serial bankruptcy filings, Skelton asserted that Bauman had not proposed her plan in good faith or for a legitimate bankruptcy purpose.

A few days later, the Harbor View Villa Homeowners Association ("Harbor View") filed an objection to Bauman's plan. Harbor View

asserted that it was a secured creditor, that the plan failed to deal with its secured claim, and that the plan was not proposed in good faith.[4] The hearing on Harbor View's objection also was scheduled for February 28, 2018.

**D.   Bauman's response to Skelton's plan objection and motion to dismiss.**

On February 8, 2018, Bauman responded to Skelton's plan objections and motion to dismiss. Bauman contended that Skelton waived his grounds for dismissal by not presenting any legal authority. She alternately maintained that the dismissal motion was a contested matter, which necessitated an evidentiary hearing because the contested matter presented disputed factual issues.

She further asserted that her plan's omnibus objection to all claims meant that she did not need to make any payments to any creditor unless and until the creditors' claims were subsequently allowed. She also claimed that she could self-disburse any and all necessary payments. According to

---

[4] Per Bauman's schedules and SOFA, her condominium unit on Albatross Street was her principal residence. She listed her condominium association as a former litigant and as a party to an executory contract with her. But Bauman did not list Harbor View as a creditor, disputed or otherwise. Nor was Harbor View mentioned in the body of Bauman's form plan. Harbor View is mentioned for the first time in her nonstandard provisions. She only spoke about her prospective litigation against Harbor View as a potential source of future funds that she might eventually disburse to holders of allowed claims, if any. She did not deal with any liability she might have to Harbor View or propose any treatment for Harbor View's claim.

her, Skelton did not need to be involved at all in the administration of her case as chapter 13 trustee. She also maintained that she presented her 2016 tax return to Skelton at her second § 341(a) meeting of creditors, though she did not provide any evidence to support this statement.

**E.    The amended plan.**

Shortly thereafter, on February 13, 2018, Bauman filed amended schedules and an amended chapter 13 plan. Bauman's amended documents raised as many concerns as her originals.[5] This time she listed the aggregate amount of her debt as exceeding $800,000.00 but still insisted that all claims against her were disputed. Additionally, her amended Schedule E/F listed only two nonpriority unsecured claims – her utility company and divorce counsel. She listed both of these unsecured claims as disputed and did not specify any amount for either claim.

Bauman also amended her Schedules I and J to restate her monthly income and expenses. As to her monthly income, she revised her monthly pension or retirement income to $3,600.00 but added an additional $3,838.00 in monthly pension or retirement income for her nondebtor spouse. To these amounts, Bauman also included an additional $20,412.00

---

[5] For example, they listed the same three parcels of residential real property, but now disclosed that the house on Archer Street had been foreclosed prepetition. Furthermore, the listing and values of Bauman's specific financial assets changed drastically. Whereas her original Schedule A/B listed the aggregate value of all of her financial assets as just over $21 million, her amended Schedule A/B listed the aggregate value of all of her financial assets as just under $176 million.

8

for "liquidate Wilbur & bank accts." According to Bauman's amended Schedule J, her monthly expenses were $7,752.00, leaving a total of $21,098.00 in monthly net income.

Bauman's amended plan, however, still objected to all claims, still asserted that she was entitled to act as the disbursing agent for her plan, and still maintained that no payments needed to be made until each claim was formally allowed. Bauman did include the following provision at paragraph 2.5 for Additional Payments:

> If the court orders debtor to pay unsecured creditors through the trustee, she will pay trustee monthly starting 30 days after husband's secret accts have been transferred to debtor's control. Except FTB, IRS and SD Tax will be paid its allowed priority claims at $500 a month, if approved.

In keeping with her plan proposals, Bauman never commenced making any plan payments.

### F. Proofs of claim filed against the estate.

While no creditor had filed a proof of claim when Bauman filed her initial plan in October 2017, that situation had changed by the time she filed her amended plan. By mid-November 2017, Wells Fargo and the FTB already had filed their proofs of claim. Wells Fargo filed a secured claim in the amount of $240,508.94, though it disclosed no arrears. The FTB filed a claim in the total amount of $7,249.89, of which it claimed $5,077.58 was entitled to priority under § 507(a)(8). In December, the San Diego County

9

Treasurer-Tax Collector filed a secured claim in the amount of $2,331.78.

Wells Fargo filed an additional secured claim in December for a separate

obligation in the amount of $166,735.34, and stated that $77,886.02 was due

and owing as of the petition date.

The day before Bauman filed her amended schedules and chapter 13

plan, her brother, Mel Marin, filed a secured claim in the amount of

$400,000. Two days after Bauman filed her amended plan, Harbor View

filed a secured claim in the amount of $105,072.31.

In January 2018, Bauman commenced separate adversary

proceedings against Harbor View and Wells Fargo seeking to disallow

their claims and various other relief including damages.

Finally, on March 7, 2018, the IRS filed its proof of claim in the total

amount of $53,043.47, of which it claimed $26,951.63 was entitled to

priority under § 507(a)(8).

**G.    Skelton's case status report and his amended plan objection and motion to dismiss.**

On February 21, 2018, Skelton filed a case status report. Two days

later he filed an amendment to his plan objection and motion to dismiss.

The documents largely overlap, though the amended plan objection and

motion to dismiss continued to request dismissal for failure to commence

plan payments and failure to provide tax returns under § 521(e)(2)(B),

among other grounds. In short, these documents pointed out that

10

Bauman's amended schedules and plan did not fix the numerous problems referenced in Skelton's original plan objection and motion to dismiss. Skelton particularly noted that Bauman still had neither made, nor expressed any intent to make, any plan payments to the trustee in spite of Skelton's original plan objection and motion to dismiss.

As for the tax return, Skelton disputed Bauman's claim that she presented him with a copy of her 2016 federal tax return at the second § 341(a) meeting of creditors. He also explained that, even if the 2016 return had been presented at that time, it was still untimely because it should have been submitted at or before the time of the first § 341(a) meeting of creditors held on January 12, 2018. Skelton further emphasized that Bauman conditioned any recovery for her creditors on her success in her litigation against her husband and other parties.

**H.    The hearing on Skelton's plan objection and motion to dismiss.**

On February 28, 2018, the bankruptcy court heard Skelton's plan objection and motion to dismiss. Bauman did not provide us with the transcript from this hearing, but the minute order from that hearing indicates that the court dismissed the bankruptcy principally based on Bauman's failure to provide her 2016 tax return or other proof of income to Skelton, and on her failure to make any plan payments since the case was commenced in October 2017. The court additionally noted that Bauman's plan as amended impermissibly proposed no plan payments to Skelton and

11

impermissibly contemplated that Bauman would self-administer her own plan. The court further found that Bauman had been given ample opportunity to address the various plan objections and had opposed the operative plan objections in writing.

The bankruptcy court entered its order dismissing the case on March 7, 2018.[6]

## I.  Bauman's Rule 9023 motion.

On March 21, 2018, Bauman filed her timely motion for rehearing and reconsideration under Rule 9023 and Civil Rule 59. She attached to her motion a declaration stating that she presented to Skelton copies of both her 2015 and her 2016 tax returns at the second § 341(a) meeting of creditors.[7] She also claimed in her declaration that, at the February 28, 2018 plan objection hearing, she offered to have a witness testify regarding her presentation of the tax returns to Skelton.

In support of her Rule 9023 motion, Bauman asserted that neither Skelton nor the objecting creditors had standing to challenge her plan. She argued that the court incorrectly treated the creditors' disputed claims as if they already had been allowed, and that disputed claims do not confer

---

[6] On March 5, 2018, the court entered a separate order sustaining Harbor View's plan objection. But Bauman's appeal focuses on the case dismissal order. So shall we.

[7] The contents of the declaration appear somewhat inconsistent with Bauman's prior unsworn statements made in her response to Skelton's plan objection, which only refer to the 2016 tax return.

either standing or any entitlement to immediate payment. Alternately, she insisted that, even if she was wrong about the immediate need to make plan payments, she had offered in her amended plan to commence making payments if the court ordered her to do so.

She further contended that she was denied due process because she was not afforded adequate time to respond to Skelton's amended plan objection and motion to dismiss. Along similar lines, she claimed that, by separately sustaining Wells Fargo's plan objections, the court lulled her into believing that if she addressed Wells Fargo's plan objections, she was sufficiently in compliance with her chapter 13 duties.

Bauman offered additional arguments of lesser import. In part, she relied on events that transpired in her prior, dismissed bankruptcy cases to support her contention that the bankruptcy court should reconsider its dismissal ruling. For instance, she posited that creditors who failed to file proofs of claim in her prior, dismissed bankruptcy cases had waived their right to be treated as creditors in her current bankruptcy case. She also reasoned that, because the district court had vacated a case dismissal order in one of her prior bankruptcy cases, the bankruptcy court's current case dismissal order was improper for those same reasons. Finally, according to Bauman, the court cited to the wrong local rule in support of its concurrent dismissal of Bauman's related adversary proceedings.

The court held a hearing on the Rule 9023 motion on May 23, 2018.

13

Bauman did not appear. The court took the matter under submission on the papers. On July 3, 2018, the bankruptcy court entered an order denying Bauman's motion. The order addressed at length, and rejected, virtually all of Bauman's arguments though the court agreed with Bauman that it had inadvertently referenced the wrong local rule.

Bauman timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (L). We have jurisdiction under 28 U.S.C. § 158.[8]

## ISSUES

1. Did the bankruptcy court commit reversible error when it dismissed Bauman's chapter 13 case?

2. Did the bankruptcy court abuse its discretion when it denied Bauman's Rule 9023 motion?

## STANDARDS OF REVIEW

We review a decision to dismiss under § 1307(c)(4) for failure to

---

[8] A BAP motions panel previously raised the issue of whether this appeal is moot because the bankruptcy court's dismissal order did not restrict Bauman from commencing a new bankruptcy case. Indeed, Bauman filed a subsequent bankruptcy case, Case No. 18-02875-CL13, which the bankruptcy court dismissed on November 8, 2018, for failure to make plan payments, for bad faith, and for failure to propose a feasible plan. Even so, this appeal is not moot. The BAP has held that even the relatively minor detriment of having to pay a new case filing fee is sufficient to prevent a prior case dismissal order from becoming moot. *See Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 868 (9th Cir. BAP 2004).

commence plan payments for an abuse of discretion. *Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 914 (9th Cir. BAP 2011); *Sievers v. Green (In re Green)*, 64 B.R. 530, 530 (9th Cir. BAP 1986). We also review for an abuse of discretion the bankruptcy court's ruling on Bauman's Rule 9023 motion. *Dicker v. Dye (In re Edelman)*, 237 B.R. 146, 150 (9th Cir. BAP 1999). The court abuses its discretion if it applies an incorrect legal rule or its factual findings are clearly erroneous. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

In contrast, dismissal under § 521(e)(2)(B) for failure to file a prepetition tax return is mandatory unless the debtor demonstrates that the failure was the result of circumstances beyond his or her control. *In re Rathbone*, Case No. 11-29544-E-13, 2011 WL 10725949, at *3 (Bankr. E.D. Cal. Sept. 19, 2011). We review the bankruptcy court's interpretation of the Code under the de novo standard of review, *Hopkins v. Cerchione (In re Cerchione)*, 414 B.R. 540, 545 (9th Cir. BAP 2009), and we review the court's factual findings for clear error, *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record." *Id.* (citing *United States v. Hinkson*, 585 F.3d 1247, 1261–62 & n.21 (9th Cir. 2009) (en banc)).

## DISCUSSION

### A.  The motion to dismiss did not deny Bauman due process.

Bauman first argues that the bankruptcy court violated her due process rights. According to Bauman, the due process violation arose when the court dismissed her case shortly after she complied with the court's prior order sustaining Wells Fargo's plan objections and amended her plan. She maintains that she was entitled to more time to respond to Skelton's amended plan objections, which were filed less than a week before the hearing on the motion to dismiss. She further claims that the bankruptcy court violated its own Local Rule – Local Rule 3015-5 – which requires that an objection to the original plan "must be noticed for hearing at least 28 days after filing the objection."

The notice requirement subsumed within the Constitution's Due Process Clause is a relatively minimal standard. *Strickland v. U.S. Tr. (In re Wojcik)*, 560 B.R. 763, 768–69 (9th Cir. BAP 2016). It merely requires "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Bauman discounts the pending motion to dismiss filed on January 18, 2018, along with Skelton's original plan objection. Skelton noticed the plan objection and motion to dismiss to be heard on February 28, 2018, well

16

beyond the 28-day notice requirement in the Local Rule. Bauman had ample notice and time to respond. In fact, she did file a lengthy written response.

As for Skelton's amended plan objection and motion to dismiss filed on February 23, 2018, it did not materially change Skelton's position on Bauman's plan or on case dismissal. Skelton sought dismissal of the bankruptcy in both his initial and amended motions to dismiss. The grounds for dismissal were identical. Consequently, the filing of Skelton's amended papers did not prejudice Bauman. Because the record establishes that Bauman had "the opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation and internal quotation marks omitted), Bauman's due process rights were not violated.

## B. Bauman's failure to make plan payments constituted cause to dismiss.

Bauman concedes that she never made any plan payments to the trustee. Section 1326(a)(1) requires chapter 13 debtors to commence making plan payments to the trustee within 30 days of filing their bankruptcy case. *See Zapata v. U.S. Tr. (In re Zapata)*, BAP No. CC–11–1184–PaKiNo, 2012 WL 4466283, at *5 (9th Cir. BAP Sept. 28, 2012); *see also* Keith M. Lundin, Lundin On Chapter 13 § 44.1, at ¶ [1], https://lundinonchapter13.com (last visited April 6, 2020) ("Without regard to when a plan is filed, every

17

Chapter 13 debtor must commence payments not later than 30 days after filing the petition or seek a court order for relief from that requirement."). Section 1307(c)(4) provides that a bankruptcy court may dismiss a case for failure to timely commence such payments. *In re Zapata*, 2012 WL 4466283, at *5 (citing *In re MacDonald*, 118 F.3d 568, 570 (7th Cir. 1997)); *accord, Witkowski v. Boyajian (In re Witkowski)*, 523 B.R. 300, 305 (1st Cir. BAP 2014). It necessarily follows that the bankruptcy court had the discretion to dismiss Bauman's bankruptcy case for failing to commence plan payments by the date of the hearing on the motion to dismiss.

Bauman's arguments on appeal are scattered. First, she directs us to her amended plan and argues that she was willing to make plan payments if directed to by the bankruptcy court. This argument misperceives the affirmative requirement imposed upon chapter 13 debtors by § 1326(a)(1) to begin making plan payments within 30 days of their bankruptcy filing. Alternatively, § 1326(a)(1) enables a debtor to obtain an order from the court to alter this requirement. Here, Bauman neither made plan payments nor sought an order from the court excusing such payments.

Second, Bauman contends that no plan payments were required because no creditor had established that it held an allowed claim. Bauman directs us to her general statement of dispute challenging all creditors' claims included as a nonstandard provision in both her initial and amended plans. As the bankruptcy court pointed out in its order denying

her Rule 9023 motion, Bauman's argument misconstrues the claims allowance process.

Rule 3007 governs objections to claims. It provides that "[a]n objection to the allowance of a claim and a notice of objection that substantially conforms to the appropriate Official Form shall be filed and served at least 30 days before any scheduled hearing on the objection or any deadline for the claimant to request a hearing." The rule further provides for specific service of an objection to any claims filed by the United States or an insured depository institution. Absent objection, a timely filed proof of claim is deemed allowed. § 502(a). The creditor holding the allowed claim does not need to take any further action in order to participate in the proposed chapter 13 distribution. Rule 3021.

Bauman failed to comply with any of these requirements. In support of her argument, Bauman primarily relies on *Litton Loan Servicing LP v. Garvida (In re Garvida)*, 347 B.R. 697, 704 (9th Cir. BAP 2006), for the proposition that "a creditor's claim" may be objected to through a proposed plan if the subject creditor is given full and proper notice. *Id.* But *Garvida* never says that a debtor can satisfy Rule 3007 as to each and every creditor in their case by filing a generalized, blanket objection to all claims. To the contrary, *Garvida* states that caution must be exercised whenever "ersatz procedure" is used to object to claims, in order to ensure that each creditor is given the "specific notice" and the one-on-one opportunity to

19

litigate contemplated by Rule 3007. *Id.* (citing *Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 497–500 (9th Cir. BAP 2003)).

Alternately, Bauman claims that she did file formal claim objections. But she only cites to the two adversary proceedings she commenced prior to the dismissal hearing: one against Wells Fargo and the other against Harbor View. Assuming that these adversary complaints subsumed claim objections, *see* Rule 3007(d), this still means that Bauman never properly filed and served specific objections to other proofs of claim, including those filed by the IRS and FTB, which included priority and unsecured components. Indeed, Bauman's amended plan committed to pay at least the priority components of these creditors' claims. This required Bauman to commence plan payments within 30 days of her bankruptcy filing.

Bauman further argues that she was not required to make plan payments to the trustee because she elected to disburse plan payments herself. Both her initial and amended plan sought to write the chapter 13 trustee out of her bankruptcy. She contends that *Cohen v. Lopez (In re Lopez)*, 372 B.R. 40 (9th Cir. BAP 2007), *aff'd and adopted*, 550 F.3d 1202 (9th Cir. 2008), supports her position. *Lopez* acknowledged that "the power to make payments in Chapter 13 directly to creditors has never been in doubt. The problem, however, lies in setting proper boundaries to the power contained in Section 1326(c)." *Id.* at 46 (citation omitted). The debtor in *Lopez* committed to make plan payments to the trustee for all arrears on his

20

secured debt, his delinquent property taxes, priority debt to the California Employment Development Department, his attorney's fees, and the trustee's fee. *Id*. at 42. He was, however, permitted to pay directly debts coming due postpetition to secured creditors and the Orange County Tax Collector. *Id*. at 42-43.

As in *Lopez*, chapter 13 debtors are most often permitted to pay secured creditors directly to maintain their postpetition obligations. *See, e.g., In re Stinebaugh*, Case No. 13-20447-TLM, 2013 WL 5883765, at *3 (Bankr. D. Idaho Oct. 30, 2013) ("*Lopez* validated the cure of prepetition defaults to a secured creditor by a chapter 13 debtor's plan payments disbursed by the trustee . . . , but with the post-petition ongoing payments made directly by the debtor, bypassing the trustee and the trustee's fee."). Debtors do not, however, have an absolute right to make direct payments to all creditors. *See Giesbrecht v. Fitzgerald (In re Giesbrecht)*, 429 B.R. 682, 690-91 (9th Cir. BAP 2010) ("Bankruptcy courts may require that payments be made through the plan based on specific factors or reasons such as administrative efficiency, tracking of payments, fairness and treatment of creditors, and the determination that there is a reduction of plan failure when all payments are made through the plan."). Bauman points to no case that has permitted a chapter 13 debtor to excise the trustee and make *all* payments directly to creditors. Rather, as a leading commentator on chapter 13 notes, "[t]hough the separate classification of some *fully secured*

21

claims for direct payment by the debtor has been permitted, most courts refuse the separate classification of *unsecured* claims for payment directly by the debtor." Lundin, *supra*, § 89.1, at ¶ [2] (emphasis in original).

*Lopez* does not provide Bauman with a sweeping authorization to self-disburse under a chapter 13 plan as she contends. It does not permit a chapter 13 debtor to avoid making *any* plan payments simply because she elects to pay all of her creditors directly. Bauman may not usurp the chapter 13 trustee's statutory role. Among other things, the trustee has many of the same financial oversight and administrative duties as a chapter 7 trustee has. *See* § 1302(b)(1). Furthermore, the chapter 13 trustee must "ensure that the debtor commences making timely payments under section 1326 of this title." § 1302(b)(5); *see also* Lundin, *supra*, § 53.9, at ¶ [1]. Permitting a debtor to make all chapter 13 payments outside of the plan would undermine the trustee's ability to carry out these duties or render them impracticable. *See id.* at § 44.6, at ¶ [6] ("Direct payments by a debtor to a creditor are difficult or impossible to account for. Debtors don't keep adequate records. Creditors are often incorporeal and have no obligation to report the receipt of payments to Chapter 13 trustees. There is no ready mechanism for informing the Chapter 13 trustee exactly what payments have been made or how the money was allocated before the trustee must administer a confirmed plan.").

Unlike the debtors in *Lopez* and *Giesbrecht*, who sought merely to

continue making their recurring postpetition payments directly to their secured creditors, Bauman has never articulated any reason justifying her proposal to pay all of her creditors directly. At bottom, she was required to make some plan payment to the trustee and to begin making those payments by November 16, 2017. She failed to do so.

Courts have rejected interpretations of § 1326(a)(1) that would permit debtors to avoid or condition the commencement of their payments under § 1326(a)(1). *See, e.g., In re Burgos*, 476 B.R. 107, 112 (Bankr. S.D.N.Y. 2012) (indicating that failure to file plan did not excuse debtor from commencing plan payments as required by § 1326(a)(1) and holding that failure to commence plan payments can be sufficient cause, by itself, to justify dismissal under § 1307(c)(4)); *In re Nowak*, 143 B.R. 154, 159–60 (Bankr. N.D. Ill. 1992) ("Clearly, chapter 13 was not enacted to grant debtors a hiatus from paying bills while their liability is adjudicated and a payment plan worked out."). Bauman's proposed plans attempted to do just that by reciting a generalized dispute as to all of her claims and by electing to pay her creditors directly to the exclusion of the chapter 13 trustee's involvement and participation. Her proposed plans did not absolve her of the duty to commence plan payments under § 1326(a)(1). After several months of failing to make plan payments while enjoying the automatic stay, dismissal of her case under § 1307(c)(4) was appropriate.

## C. Bauman's failure to provide her 2016 tax return also justified dismissal.

Alternately, the court's dismissal was sufficiently supported by Bauman's failure to submit to Skelton her 2016 tax return. Section 521(e)(2)(A) required Bauman to submit this return to the trustee no later than seven days before her first meeting of creditors, which was held on November 17, 2017.  In turn, § 521(e)(2)(B) required the bankruptcy court to dismiss the case when Bauman failed to comply, unless she demonstrated that her "failure to so comply [was] due to circumstances beyond the control of the debtor." § 521(e)(2)(B); *see also In re Rathbone*, 2011 WL 10725949, at *3 (upholding dismissal under § 521(e)(2)(B)); *In re Walker*, Case No. 06-10879, 2006 WL 4671832, at *2 (Bankr. D. Md. July 20, 2006) (ordering case dismissed based on debtor's failure to provide tax return).

As of January 18, 2018, when Skelton filed his initial plan objection and motion to dismiss, he asserted that Bauman had failed to provide him with her 2016 tax return. In her February 8, 2018 response Bauman claimed, without submitting any proof, that she presented the 2016 tax return to Skelton at the *continued* § 341(a) meeting of creditors held on January 12, 2018. But the original meeting of creditors was scheduled for November 17, 2017. Bauman has never attempted to claim that she timely submitted the return in compliance with  § 521(e)(2)(A) or that she failed to do so for reasons beyond her control as contemplated in  § 521(e)(2)(B).

With her Rule 9023 motion, Bauman submitted a declaration in which she swore that she presented the tax return to Skelton at the continued meeting of creditors on January 12, 2018. We separately deal with the Rule 9023 motion below. But it suffices to say here that, even if the court had accepted this belated evidence as timely presented and credited its contents, the 2016 return still was untimely. And Bauman never offered any excuse for her noncompliance. This was a sufficient ground for dismissal based on §§ 521(e)(2)(A) and (B). *In re Walker*, 2006 WL 4671832, at *2.

### D. None of Bauman's other arguments justify reversal.

Bauman advances several other arguments, but none of them justify reversal. Bauman claims that the district court's decision in *Bauman v. Billingslea (In re Bauman)*, Case Nos. 12cv2476-IEG (RBB) & 12cv2482-IEG (BLM), 2013 WL 4679987 (S.D. Cal. 2013), mandates reversal. But her reliance on *Billingslea* is misplaced. *Billingslea* vacated the bankruptcy court's dismissal order in a prior bankruptcy under § 1307(c)(5) based on Bauman's failure to address plan deficiencies in that case – deficiencies that the bankruptcy court never adequately apprised her of. *Id.* at *2. Nor did Bauman have in *Billingslea* "an opportunity to either argue that the plan was not deficient or to correct the plan to meet the perceived problems." *Id.* (quoting *Minkes v. LaBarge (In re Minkes)*, 237 B.R. 476, 478–79 (8th Cir. BAP 1999)). Here, in contrast, the bankruptcy court granted dismissal based on §

25

1307(c)(4) for failure to commence plan payments and under § 521(e)(2)(B) for failure to timely submit her 2016 tax return. As held above, Bauman had ample time to respond to these grounds for dismissal, and she did respond in writing. Thus, the prior decision in *Billingslea* is inapposite to this appeal.

Bauman next argues that Skelton lacked standing.[9] She is simply wrong. Any "party in interest" may seek conversion or dismissal of a chapter 13 bankruptcy under § 1307(c). The phrase "party in interest" is "widely understood by judges, practitioners, and commentators to include the standing trustee even though there is no specific definition for party in interest in chapter 13, as there is in chapter 11." *In re Slaughter*, 191 B.R. 135, 144 (Bankr. W.D. Wis. 1995) (collecting authorities). This is because chapter 13 trustees have an independent statutory duty to exercise financial oversight over the case and the specific duty to appear and be heard regarding plan issues. *See* § 1302; *Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1406–07 (9th Cir. 1995). Thus, it has long been established that a chapter 13 trustee has standing as a "party in interest" to seek dismissal under § 1307(c). *See* Lundin, *supra*, § 53.14, at ¶ [1] (listing cases).

In contrast, § 521(e)(2)(B) does not specify who has standing when

---

[9] Bauman also challenges the standing of any of her creditors to object to her plan. But this argument could not possibly justify reversal of the order on appeal, which granted *Skelton*'s motion to dismiss.

the debtor does not submit tax returns to the trustee as required under § 521(e)(2)(A). The statute merely says that the court "shall" dismiss the case unless the debtor establishes that noncompliance was the result of circumstances beyond his or her control. Nonetheless, the role of the trustee in the chapter 13 case in general, and in the submission of tax returns more specifically, ineluctably leads to the conclusion that the chapter 13 trustee must be able to bring before the court a request for dismissal under § 521(e)(2)(B). To hold otherwise would undermine the clear statutory scheme and the central role of the chapter 13 trustee. *See generally In re Escarcega*, 573 B.R. 219, 234 (9th Cir. BAP 2017) (discussing need for chapter 13 trustees' involvement in the confirmation process).

The only other issue we need to address is the denial of Bauman's motion under Rule 9023. Bauman's principal argument pertaining to her Rule 9023 motion concerns her declaration submitted with the motion in which she stated that she presented her tax returns to Skelton at the continued meeting of creditors.[10] According to Bauman, the court ignored her declaration. But the court actually held that she did not present any newly discovered evidence. This was not error.

To qualify as newly discovered evidence under Rule 9023 (which

---

[10] Skelton submitted his own declaration in opposition to the Rule 9023 motion and stated that he did not receive Bauman's tax return until the February 28, 2018 hearing on his motion to dismiss.

incorporates Civil Rule 59(e)), Bauman needed to demonstrate: "(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case." *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000). On this record, it is obvious that Bauman could not meet any of these three standards. She certainly could have presented her own declaration testimony before the court ruled on the dismissal motion. And she clearly knew what transpired at the continued meeting of creditors, as she attended it.

Equally important, this evidence would not have changed the outcome of the dismissal motion. As explained above, even if the court had accepted this evidence and found it credible, it merely shows that Bauman submitted the required tax return more than two months after it was due pursuant to § 521(e)(2)(A). Nor did Bauman ever tender any evidence of any circumstances beyond her control that prevented her from timely submitting the return, as contemplated by § 521(e)(2)(B).

Bauman makes several other arguments in her papers. For instance, she assails the court for citing Local Rule 7041-3 instead of Local Rule 7041-1 in support of its concurrent dismissal of her related adversary proceedings. She further complains that the bankruptcy court should have ordered the turnover of her husband's financial records. She also discusses

at length events that transpired and rulings that were made in her prior bankruptcy cases. Finally, she contends that we should order the presiding bankruptcy judge to recuse himself even though she never brought a recusal motion in the underlying bankruptcy case. None of these points have any bearing on the orders appealed and do not establish that the bankruptcy court erred when it dismissed her case or denied Bauman's Rule 9023 motion. Accordingly, we need not further address these points in order to dispose of this appeal.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's case dismissal order and its order denying Bauman's motion under Rule 9023.